CORRECTED                                                                [PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-11217

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 01, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-20381-CR-SH

UNITED STATES OF AMERICA,

                                                        Plaintiff-Appellee,

versus

ELIO JESUS ARBOLAEZ,

                                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 1, 2006)**

Before BIRCH and MARCUS, Circuit Judges, and NANGLE[*], District Judge.

PER CURIAM:

---

[*]Honorable John F. Nangle, United States District Judge for the Eastern District of
Missouri, sitting by designation.

Elio Jesus Arbolaez appeals the district court's final judgment of conviction, sentence, and final order of forfeiture subsequent to a jury's finding him guilty as to one count of conspiracy to possess with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1), and one count of corrupt alteration, destruction, and mutilation of a cellular telephone with the intent to impair that phone's integrity and use in an official proceeding, in violation of 18 U.S.C. § 1512(c)(1). Although we find the district court erred in admitting hearsay testimony of a co-defendant and in admitting an incriminating comment made by Arbolaez without first requiring the government to show that he had waived his Miranda[1] rights, neither constituted reversible error in this case. We further find that Arbolaez failed to make the substantial preliminary showing necessary to mandate a Franks[2] hearing with regard to the validity of the affidavit supporting the search warrant for his residence. Finally, we find that the district court erred in precluding defense counsel from presenting evidence or argument in connection with the forfeiture portion of the trial and that the error was not harmless. Accordingly, we AFFIRM the conviction and sentence, but REMAND for further proceedings as to forfeiture consistent with this opinion.

---

[1]Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).

[2]Franks v. Delaware, 438 U.S. 154, 928 S. Ct. 2674 (1978).

# I. BACKGROUND

In the course of investigating certain marijuana trafficking originating in the Miami area, agents of the United States Drug Enforcement Administration ("DEA") searched the residence of Reinaldo Perez. While they were searching, Arbolaez arrived in a Hummer. He told the agents that he owned the property and that he had stopped at the house because he had seen many cars parked there and because Perez owed him rent. Agents asked Arbolaez for his consent to search a shed on the property. Arbolaez responded that he "didn't want anything to do with this." R5 at 271.

After Arbolaez left, Perez consented to a search of the shed, which yielded equipment commonly used in hydroponic cultivation of marijuana. Perez initially asserted that the equipment belonged to someone named Rodriguez who was in jail. Perez was arrested and, based in part on information he allegedly provided after his arrest, agents obtained and executed a search warrant for Arbolaez's residence. The post-arrest information allegedly provided by Perez included general statements about Arbolaez's involvement in the trafficking and detailed descriptions of where certain evidence could be found in Arbolaez's house. He also allegedly provided a map reflecting the location of items.

During the search, a narcotics-detecting canine alerted to several specific areas. In the master bedroom, agents found, among other things, a loaded handgun, used plastic bags bearing the numbers "36" and "15,720," a sheet of instructions in Spanish for hydroponic plant cultivation, and quantities of U.S. currency in a dresser drawer and sealed in a plastic water bottle. R4 at 67-68. In the spare bedroom and bathroom, they found boxes of plastic food storage bags like the used ones found in the master bedroom, rubber bands, tape, and a large diaper bag containing 8.6 grams of marijuana residue, commonly known as "shake." Id. at 74. In the kitchen, they found a copy of the criminal complaint against a co-defendant, Gilford Alvarez, that had recently been filed in federal court. In the Hummer, they found duffle bags matching those containing drugs that were seized from Alvarez, a vacuum sealing machine, more boxes of plastic bags, and a bag of rubber bands. Agents found a total of four cellular telephones: two in the residence, one in the Hummer, and one in Arbolaez's pocket. The government emphasized at trial that everything had been exactly where Perez had allegedly said it would be.

Agents advised Arbolaez of his Miranda rights before conducting the search and told him the nature of the investigation and why they were at his house. In the course of the search, the police presented him with each item being seized, to

4

gauge his reaction. Arbolaez reportedly became increasingly agitated. Generally, his reaction was to look away from the evidence being shown him and deny any knowledge of it. See R5 at 186. When one agent, Agent Crispin, accused him of lying about this, Arbolaez commented in Spanish to the officer sitting with him that "15 years ago he would have killed [Agent Crispin]" for such an accusation. Id. at 189. Toward the end of the search, Agent Crispin approached Arbolaez with two cell phones. He asked Arbolaez to identify which was his and which was his wife's. Arbolaez grabbed one of the phones, "ripped [it] apart and then he smashed it on the ground and tried to step on it." R4 at 79. This made it impossible to retrieve numbers and other information through the phone's display. Agents then arrested Arbolaez and took the phone from his pocket. Telephone records later showed close to 150 calls had been made during May of that year between a phone found in the Hummer and a phone belonging to someone else confirmed to have been involved in the trafficking.

Arbolaez was indicted on three counts: conspiracy with co-defendants Gilfred Alvarez, Reinaldo Perez, and others to possess marijuana with intent to distribute it (Count 1); possession of marijuana with intent to distribute it (Count 2); and corrupt alteration, destruction, and mutilation of a cellular telephone with the intent to impair that phone's integrity and use in an official proceeding (Count

3). The indictment also included a forfeiture allegation with regard to property that (1) constituted proceeds obtained as a result of the violations or (2) was used or intended to be used to facilitate the violations. Specifically to be forfeited were a 2003 Hummer automobile and Arbolaez's residence located at 19895 S.W. 184th St. in Miami, Florida.

Arbolaez's codefendants pled guilty to the charges against them and Arbolaez proceeded to trial alone. Just before trial, the government filed two supplemental responses to a standing discovery order. The first put Arbolaez on notice for the first time that the government planned to use the statement he had made about killing Agent Crispin during the search of his residence as an inculpatory statement. R1-48. The second stated that:

> According to Reinaldo Perez' defense counsel, Mr. Perez now denies providing to agents the statements attributed to him in the complaint that implicate co-defendant Elio Jesus Arbolaez in the conspiracy. Mr. Perez also believes that Mr. Arbolaez will have him murdered if Mr. Perez testifies for the government.

R1-51. Arbolaez then filed motions to suppress both his statement about Agent Crispin and the evidence gained by way of the search warrant obtained based on Perez's statements. Although the district court heard argument from both parties on the motions, there was no evidentiary hearing on either issue. The court reserved ruling on both motions until "the appropriate time during the trial." R2 at

6

6. The statements allegedly made by Perez underlying the search warrant affidavit, the evidence obtained through the search of Arbolaez's house, and Arbolaez's statement about killing Agent Crispin were all admitted into evidence in the course of the trial. Perez did not testify.

A jury found Arbolaez guilty as to Counts 1 and 3, but not guilty as to Count 2. The court then immediately instructed the jury as to the forfeiture issue, and sent the jurors out to deliberate, over the objection of Arbolaez's counsel that he wanted to put on evidence and present arguments.[3] The jury rendered a criminal forfeiture verdict finding that the 2003 Hummer and the residence had been used or were intended to be used to facilitate Arbolaez's commission of Count 1. The district court then ordered a preliminary order of forfeiture as to both properties. Arbolaez moved for a new trial. The district court denied the motion.

On 23 February 2005, the district court sentenced Arbolaez to concurrent terms of 28 months imprisonment to be followed by two years of supervised release and required him to pay a $200 special assessment. The court also issued a

---

[3]The court also inadvertently instructed the jury that it could find the property subject to forfeiture based on Arbolaez's violation of Count 2 even though the jury had already found him not guilty on that count. See R7 at 16. Similarly, the charge included instructions for determining whether the property represented proceeds traceable to the offense, even though no evidence was presented at trial on that issue. Id. at 14. Finally, however, the government points out that "the special verdict form the jury ultimately used was properly limited to Count 1 of the superceding indictment and referred only to the properties' facilitation of the offense." Appellee Br. at 47 n.22. We note that the verdict form itself, docket number 97, was not included in the record on appeal.

7

judgment and commitment order, ordering forfeiture of Arbolaez's interests in the Hummer and the residence.[4] Arbolaez timely filed his appeal on 2 March 2005.

On appeal, Arbolaez argues that the district court committed reversible error when it (1) admitted statements from a non-testifying co-conspirator under Fed. R. Evid. 801(c) as background evidence; (2) admitted a statement made to police in the course of the search of Arbolaez's home, without first requiring the government to establish that Arbolaez had affirmatively waived his Miranda rights; (3) refused to hold a pre-trial Franks hearing as to the sufficiency of an affidavit in support of a warrant for the search of Arbolaez's residence when the witness who allegedly gave the statements upon which the warrant was granted denied having made those statements after the warrant was executed; and (4) refused to allow Arbolaez's counsel to present evidence and argument at the forfeiture phase of the trial.

---

[4]This order incorrectly stated that the forfeiture was "consistent with the plea agreement of forfeiture." R1-121 at 6. After a motion by the government, the order was corrected to state: "Forfeiture of the defendant's right, title and interest in certain property is hereby ordered consistent with the previously entered Preliminary Order of Forfeiture." R1-128 at 6.

## II. DISCUSSION

A. Statements of Non-testifying Codefendant

  1. Hearsay

  Arbolaez first argues that the trial court erred in allowing Agent Crispin to recount the statements allegedly made by Perez after his arrest regarding Arbolaez's participation in the trafficking conspiracy. More specifically, he argues that the statements should have been excluded as hearsay.[5] We generally review a district court's admission of evidence for an abuse of discretion. United States v. Cunningham, 194 F.3d 1186, 1195 (11th Cir. 1999). The Federal Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Such hearsay is not admissible except as provided by the Rules. Fed. R. Evid. 802.

  In this case, the district court allowed Agent Crispin to testify as to what Perez had told him because the statements were "one of the exceptions . . . not

---

[5]These statements included, inter alia: (1) that Perez had supplied codefendant Alvarez with the marijuana that had been seized from Alvarez; (2) that Perez had obtained that marijuana from Arbolaez; (3) identification of Arbolaez's residence and vehicle; (4) that on the day the drugs were seized from Alvarez, Arbolaez had earlier delivered them to Perez at a gas station near Perez's home; (5) that they were delivered in three duffle bags, which he took to his house and loaded into Alvarez's vehicle; (6) that Arbolaez had driven a yellow Hummer to the gas station exchange; and (7) detailed information about where in Arbolaez's residence the police would be able to find various evidence including packaging materials and equipment for both money and marijuana to be shipped to New York. R4 at 60-62.

being shown to prove the truth of whatever he was told, but only that it was told to him." R4 at 60. The court explained this to the jury before the statements were first admitted, reiterated it later, and the prosecutor mentioned in his closing argument that the statements were being offered not for their truth but to explain Agent Crispin's actions after hearing them. See id.; R5 at 307-309; R6 at 24-25. Thus, although there is some confusion in the record as to the Rule under which the statements were admitted,[6] it is clear from these references that the court allowed the statements in as non-hearsay pursuant to Fed. R. Evid. 801(c).[7]

We have ruled that testimony as to the details of statements received by a government agent and later used as the basis for an affidavit in support of a search warrant, even when purportedly admitted "not . . . for the truthfulness of [what the informant said but] to show why [the agent] did what he did" after he received that information, constitutes inadmissible hearsay. See United States v. Rodriguez, 524 F.2d 485, 487 (5th Cir. 1975) (per curiam). Even a court's pre-admission

---

[6]Not only did the district court use the word "exception" in admitting the statements, the government's brief in response to Arbolaez's motion for a new trial cites Rule 803(3) which it identifies as the "state of mind hearsay exception." R1-103 at 1. The state of mind exception however, refers to the state of mind of the declarant, not to the state of mind of the listener or hearer of the statement. See Fed. R. Evid. 803(3). Neither it nor any of the other exceptions listed in Rules 803 and 804 apply to this statement.

[7]The jury was clearly confused as it sent a note to the Judge late in its deliberations asking for a clarifying instruction regarding the statements attributed to Perez and recounted by Crispin. The judge, however, refused, with the agreement of counsel for both parties, to give any further instruction on the issue. R7 at 6-8.

10

warning or other limiting instruction is "insufficient to remove the statements from the realm of hearsay . . . [or to] preclude[] the jury from considering the informant's statements as some evidence [of the defendant's alleged role]." Id. Thus, the challenged statements constituted inadmissible hearsay and the court erred in admitting them into evidence.

This alone, however, does not mandate a reversal of conviction: "[t]o require a new trial . . .[a] significant possibility must exist that, considering the other evidence presented by both the prosecution and the defense, the . . . statement had a substantial impact upon the verdict of the jury." Id. "[E]videntiary and other nonconstitutional errors do not constitute grounds for reversal unless there is a reasonable likelihood that they affected the defendant's substantial rights; where an error had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict, reversal is not warranted." United States v. Hawkins, 905 F.2d 1489, 1493 (11th Cir. 1990).

The other evidence against Arbolaez, in this case, included: marijuana residue, packaging materials for both money and drugs, a copy of the recent criminal complaint against one of his co-defendants and instructions for hydroponic cultivation (commonly understood to be used for growing marijuana), all of which were found in his home, records of cell phone calls having been made

11

between Arbolaez's phone and a phone used by one of the New York conspirators during the trafficking operation, and, finally, his destruction of the mobile phone during the search of his house. Though generally circumstantial, this evidence is strong, and we find it unlikely that the admission of Perez's statements had a substantial influence on the jury's verdict as to either count upon which he was convicted. Accordingly, although the court erred in admitting the statements, the error was harmless and so does not merit reversal.

2. Confrontation Clause

Arbolaez has alternatively argued that the admission of this evidence violated his rights under the Confrontation Clause as explained in Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004). Because he did not, however, lodge a timely Confrontation Clause objection,[8] we review this claim for plain error only. United States v. Baker, 432 F.3d 1189, 1206, 1207 n.12 (11th Cir. 2005). Under plain error review, an appellate court may not correct an error not raised at trial unless there is "(1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously

---

[8]Arbolaez's objection at trial was based on hearsay. A hearsay objection to testimony at trial, standing alone, does not preserve a constitutional challenge under the Confrontation Clause for appeal. See United States v. Chau, 426 F.3d 1318, 1321-22 (11th Cir. 2005) (per curiam).

affects the fairness, integrity, or public reputation of judicial proceedings." Baker, 432 F.3d at 1202-03. The inquiry as to a defendant's substantial rights invokes the "same language employed in [Federal Rule of Criminal Procedure] 52(a), and in most cases it means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." United States v. Olano, 507 U.S. 725, 734, 113 S. Ct. 1770, 1778 (1993).

First, "[s]tatements taken by police officers in the course of interrogations are *definitively* testimonial" and thus fall within the protection afforded by the Confrontation Clause. Baker, 432 F.3d at 1204 (citation and punctuation omitted); see also Crawford, 541 U.S. at 53 n.4, 124 S. Ct. at 1365 n.4. This includes not only "technical legal" interrogations but also "witness statements given to an investigating police officer." Baker, 432 F.3d at 1204. Because Perez's statements fall into that category, and because Arbolaez had no opportunity to cross-examine Perez, the district court erred under Crawford by allowing Agent Crispin to recount them. Second, "[e]rror is 'plain' when, at the time of appellate review, it is 'obvious' or 'clear' under current law." Id. at 1207. Given the Supreme Court's discussion of testimonial statements in Crawford and our further discussion thereof in Baker, we find this error to be "plain." Finally, however, given the substantial admissible evidence against Arbolaez, as discussed in connection with his hearsay

13

argument, there is no reasonable probability that this error had a substantial effect on the jury's verdict as to either count.[9]  Accordingly, we find no plain error.[10]

B. Miranda

Arbolaez next argues that the district court erred in admitting his statement, made during the execution of the search warrant, that "fifteen years ago [he] would have killed [Agent Crispin]," without requiring the government first to establish that he had waived his Fifth Amendment right to remain silent.  Under Miranda, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."  Miranda, 384 U.S. at 444, 86 S. Ct. at 1612.  In this case, the judge made no explicit finding as to compliance with Miranda.

Both parties agree that, when Arbolaez made the statement in question, he was not free to leave and was thus in custody for the purposes of Miranda.  It also appears that there is no dispute that law enforcement agents had read Arbolaez his Miranda rights, in Spanish, prior to his making the statement.  Arbolaez contends,

---

[9]Incidentally, that the jury declined to find Arbolaez guilty of the substantive offense of possession with intent to distribute, even though one of the challenged statements described Arbolaez delivering the marijuana directly to Perez, further demonstrates that the jury did not improperly consider Perez's statements for the truth of the matters asserted thereby.

[10]Because we do not find the error to have affected Arbolaez's substantial rights, we do not reach the issue of its effect upon the integrity of judicial proceedings.

14

however, that the government failed to show that Arbolaez actually understood his Miranda rights and waived them "voluntarily, knowingly and intelligently." Id. at 444.

A defendant alleging a Miranda violation is entitled to a determination "outside the presence of the jury with [the defendant] having the right to be heard." Turner v. United States, 387 F.2d 333, 334 (5th Cir. 1968); cf. Jackson v. Denno, 378 U.S. 368, 380 (1964) (imposing a hearing requirement when a defendant objects to admission of a confession that the defendant claims was coerced). In other words, a district court must make a reasoned determination, holding a hearing if necessary, regarding a defendant's Miranda rights.

Here, the district court did not conduct a hearing to evaluate Arbolaez's Miranda claim. Nor did it otherwise make any reasoned determination regarding the Miranda challenge. On this record, we will not presume that the district court made an implicit finding nor make our own fact-intensive judgment. Under these circumstances, the district court should have held a hearing to determine whether there was a valid waiver of Miranda rights or whether the statement was otherwise spontaneous and not the result of interrogation. Accordingly, we assume for the purposes of this case that there was a violation of Miranda. We turn next to the pivotal question of whether that error constitutes reversible error.

15

"The admission of statements obtained in violation of <u>Miranda</u> is subject to harmless error scrutiny. 'The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'" <u>Hart v. Att'y Gen. of State of Fla.</u>, 323 F.3d 884, 895 (11th Cir. 2003) (quoting <u>Fahy v. Connecticut</u>, 375 U.S. 85, 86-87, 84 S. Ct. 229, 230 (1963)).  In making this determination, the court must inquire into "(1) the effect of the erroneously admitted statement upon the other evidence introduced at trial, and (2) upon the conduct of the defense." <u>Id.</u>

In the context of the evidence gathered in the execution of the search warrant – marijuana residue, packaging materials for drugs and money, a copy of the criminal complaint recently filed against his codefendant in federal court, instructions for hydroponic plant cultivation (commonly used to grow marijuana), the cell phone calls made between Arbolaez's phone and that used by one of the New York conspirators during the conspiracy, and the destruction of the mobile phone  – the statement, which was not at all closely tied to the offenses with which Arbolaez was eventually charged, could have made little difference to the jury verdict as to either count.  Thus, although it was error for the district court to admit the statement, the error was harmless and does not merit reversal.

C. *Franks* Hearing

1. Standard of Review

Generally, a court's decision about whether to hold an evidentiary hearing lies within that court's sound discretion and will be reviewed only for an abuse of discretion. See United States v. Dynalectric Co., 859 F.2d 1559, 1580 (11th Cir. 1988). We have not stated a precise standard of review for a district court's denial of a Franks hearing, and other circuits are split on the issue.[11] Because, as was the case for the Sixth Circuit in United States v. Stewart, "the more exacting de novo standard of review is satisfied" here, we need not address the issue further. Stewart, 306 F.3d 295, 304 (6th Cir.2002).

2. Franks

Under Franks, a defendant may challenge the veracity of an affidavit in support of a search warrant if he makes a "substantial preliminary showing" that (1) the affiant deliberately or recklessly included false statements, or failed to include material information, in the affidavit; and (2) the challenged statement or omission was essential to the finding of probable cause. Franks, 438 U.S. at 155-

---

[11]Compare United States v. Fairchild, 122 F.3d 605, 610 (8th Cir.1997) (review for abuse of discretion), United States v. Skinner, 972 F.2d 171, 177 (7th Cir.1992) (review for clear error), United States v. Hadfield, 918 F.2d 987, 992 (1st Cir.1990) (same), and United States v. One Parcel of Property, 897 F.2d 97, 100 (2d Cir.1990) (same), with United States v. Homick, 964 F.2d 899, 904 (9th Cir.1992) (de novo review), and United States v. Mueller, 902 F.2d 336, 341 (5th Cir.1990) (same); see also United States v. Stewart, 306 F.3d 295, 304 (6th Cir. 2002) (discussing split).

56, 28 S. Ct. at 2676. If he does so, he is entitled to an evidentiary hearing on the issue. Id. at 155, 28 S. Ct. at 2676.

Here, at some point after the search warrant had been executed, Arbolaez's codefendant Perez denied ever having made the statements on which basis the search warrant was obtained. Arbolaez then filed a motion to suppress, requesting a Franks hearing. At a hearing called to resolve pretrial issues, the prosecutor stated:

> I am prepared to put on testimony with corroborating evidence showing that Mr. Perez actually did say what he said to the DEA. I am prepared to do that today. And I think that is probably the way to handle it.
> The issue seems fairly clear cut. It does appear to be a Franks issue. And I am prepared to rebut the defendant's allegations.

R2 at 5. Nevertheless, the district court appears to have concluded incorrectly that Arbolaez would not be entitled to an evidentiary hearing under any circumstances. This misapprehension of law, however, did not amount to error in this case, because Arbolaez failed to make the "substantial preliminary showing" that would have entitled him to a hearing.

We have noted that the substantiality requirement is not lightly met:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out

18

specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

Williams v. Brown, 609 F.2d 216, 219 (5th Cir. 1979) (quoting Franks, 438 U.S. at 171, 98 S. Ct. at 2685).  In this case, Arbolaez's attack, in that, if the statements had never been made, Agent Crispin would have to have lied in the affidavit, is certainly an allegation of deliberate falsehood.  It is also externally, though indirectly, supported by Perez's alleged claim never to have made the statements. The problem here is that Arbolaez relies entirely upon the government's report of a statement by Perez's attorney that Perez denied having made the statements and that he would refuse to testify any further out of fear of reprisal by Arbolaez. There is no affidavit or otherwise sworn statement alleging that Crispin knowingly or recklessly included false statements in the search warrant affidavit. Accordingly, we find that Arbolaez has failed to make the necessary "substantial preliminary showing" and that there is no error.

D. Forfeiture Phase

Finally, Arbolaez argues that the district court committed reversible error in refusing to allow him to present evidence and argument during the forfeiture phase of the trial.  Denial of the opportunity to make a final argument to the trier of fact,

19

is a "denial of the basic [constitutional] right of the accused to make his defense."

See Herring v. New York, 422 U.S. 853, 859, 865, 95 S. Ct. 2550, 2554, 2556

(1975). Similarly, "[i]mplicit in [a defendant's Sixth Amendment Right to

compulsory process for obtaining witnesses in his favor] – as well as in the basic

notion of 'due process of law' in general – is the idea that criminal defendants

must be afforded the opportunity to present evidence in their favor." United States

v. Hurn, 368 F.3d 1359, 1362 (11th Cir. 2004) (citations omitted). Errors in

contravention of these constitutional rights must be found harmless beyond a

reasonable doubt or an otherwise valid conviction will be set aside. See Chapman

v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 828 (1986)). Finally, constructive

denial of counsel is "legally presumed to result in prejudice" and thus to constitute

a structural error. Strickland v. Washington, 466 U.S. 668, 692, 104 S. Ct. 2052,

2067 (1984); see also United States v. Cronic, 466 U.S. 648, 659 & n.25, 104 S.

Ct. 2039, 2047 (1984) (structural error exists where counsel is "prevented from

assisting the accused during a critical stage of the proceeding").

Arbolaez's counsel was denied the opportunity to argue, with respect to the

forfeiture phase of the trial, even that the existing record evidence did not satisfy

the additional elements required for forfeiture. He was denied the opportunity to

present any evidence on the issue or to do anything to challenge the forfeiture. The

20

government concedes the error but argues that it is harmless. Although we may say it is unlikely, given the paucity of information in the record about what evidence Arbolaez might have introduced during the forfeiture phase of his trial, that such evidence would have made a difference to the jury, we cannot call this error harmless beyond a reasonable doubt as to this phase of the trial.

## III. CONCLUSION

Arbolaez appeals his conviction and sentence, and the final order of forfeiture entered subsequent to a jury's finding him guilty of conspiracy to possess with intent to distribute marijuana and corrupt alteration, destruction, and mutilation of a cellular telephone with the intent to impair that phone's integrity and use in an official proceeding. We find the district court erred in admitting the hearsay testimony of a co-defendant and admitting an incriminating comment made by Arbolaez without first requiring the government to show that he had waived his Miranda rights, but that neither of these errors merits reversal in this case. We further find that Arbolaez failed to make the substantial preliminary showing necessary to mandate a Franks hearing. Finally, however, we find that the district court erred in precluding defense counsel from presenting evidence or argument in connection with the forfeiture portion of the trial, and we are unable to say that this error was harmless beyond a reasonable doubt. Accordingly, we

21

**AFFIRM** the conviction and sentence, but **VACATE** the final order of forfeiture and **REMAND** the case for proceedings as to forfeiture consistent with this opinion.