[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 5, 2010
JOHN LEY
ACTING CLERK

_____

No. 08-14746

_____

D. C. Docket No. 07-00109-CR-3-MCR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DARRELL EUGENE LEE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(January 5, 2010)

Before DUBINA, Chief Judge, BIRCH and BLACK, Circuit Judges.

PER CURIAM:

Defendant-Appellant Darrell Eugene Lee appeals his conviction for

possession of a firearm by a convicted felon. His only argument on appeal is that

the district court erred when it denied his motion to suppress a statement that he made to police after being placed under arrest. Specifically, Lee asserts that the statement was inadmissible because it was obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). Appellee, the United States of America, asserts that the statement was not the product of a custodial interrogation and, therefore, did not violate *Miranda*. In the alternative, Appellee argues that, even if admission of the statement constituted an error, such an error was harmless beyond a reasonable doubt.

## I. BACKGROUND

At approximately 1:15 pm on August 2, 2007, Deputy Ronald Busbee, Jr., of the Escambia County Sheriff's Department in Escambia County, Florida, was dispatched to the location of an armed disturbance. He was advised by the dispatcher that there were several people fighting and that one was armed with a gun. As Deputy Busbee turned onto the street where the disturbance was reportedly taking place, he observed a vehicle parked in the roadway. The driver's side door of the vehicle was open and an individual later identified as Lee was standing near the vehicle apparently arguing with a crowd that had gathered. The crowd began to disperse as Deputy Busbee arrived and Deputy Busbee then saw Lee turn toward him and begin to run. Deputy Busbee saw Lee enter the driver's

side of the car, exit the car, and throw a black object into a wooded area. Deputy Busbee then observed Lee close the vehicle's driver's door and begin to walk away. Deputy Busbee ordered Lee to stop, detained him, and placed him in the back of his patrol car in handcuffs.

While Lee was detained in the back seat of the patrol car, Deputy Busbee took a sworn statement from the alleged victim Brandon Williams, who was bleeding from a cut above his eye. Williams told Deputy Busbee that he was walking on a trail through a nearby wooded area when he was confronted by Lee. According to Williams, after he and Lee exchanged words, Lee walked to his car and returned with what Williams believed to be a gun. According to Williams, more words were then exchanged between he and Lee, after which Lee hit Williams above his left eye with the gun. Williams told Deputy Busbee that when Lee saw Deputy Busbee driving down the road, he threw the gun into the woods. Deputy Busbee also took a sworn statement from a witness, Latoya Smith, which corroborates the statement given by Williams.

At the same time, other officers–including one with a trained canine–arrived at the scene and searched the wooded area near Lee's vehicle. Within thirty minutes, the canine located a black, .380 caliber handgun in the woods. The gun was found approximately eight to ten feet from the street. According to Deputy

3

Busbee, after the gun was found, Lee began yelling at him from the back of the patrol car and asking to speak with him. Deputy Busbee stood outside of his patrol car and opened the door to speak with Lee. According to Deputy Busbee, Lee spontaneously told him that he was in the area gambling. When Deputy Busbee asked Lee why he had a gun, Lee responded, "You know what type of area this is." Deputy Busbee then asked Lee whether he was a convicted felon, to which Lee responded that he was. Following this exchange, Deputy Busbee told Lee that he was going to seize his vehicle and Lee stated "Don't do that. You already have the gun." According to Lee, there was no break in the brief colloquy, a fact not contested by the government.

After he was indicted on the charge of possession of a firearm by a convicted felon and prior to trial, Lee filed a motion to suppress the three statements that he made to Deputy Busbee, asserting that they were the product of a custodial interrogation and, because he was not given *Miranda* warnings, they were inadmissible at trial. The government conceded that Lee was not advised of his right against self-incrimination (Deputy Busbee admitted as much in his testimony at the motion to suppress hearing) and, therefore, that the first two questions and responses were inadmissible and that they would not be used by the government at trial. The only issue before the district court, therefore, was whether

4

the third statement in response to Deputy Busbee telling Lee that he was going to seize his vehicle was admissible. After hearing testimony and arguments from both parties, the district court denied Lee's motion to suppress the third statement. In an oral pronouncement of its decision, the district court stated that, after considering the totality of the circumstances, including the fact that the questions by Deputy Busbee occurred in back-to-back sequence, it found no reason to believe that, by advising Lee of the "routine police procedure of seizing his vehicle," Lee would respond with an incriminating statement. The district court held that Lee's response to Deputy Busbee's statement about seizing his vehicle was spontaneous and not the product of a custodial interrogation and, therefore, that its admission would not violate *Miranda*.

Lee was tried by a jury and convicted of possession of a firearm by a convicted felon. During its case-in-chief, the government introduced Lee's third statement to Deputy Busbee. After being adjudicated guilty, Lee was sentenced to a prison term of 120 months. He is currently incarcerated.

## II. STANDARDS OF REVIEW

Our review of a district court's denial of a motion to suppress is a mixed question of law and fact. *United States v. Delancy*, 502 F.3d 1297, 1304 (11th Cir. 2007). We review the district court's findings of fact for clear error,

5

construing the evidence in the light most favorable to the party that prevailed below, and review the district court's interpretation and application of the law de novo. *Id.*

The harmless error rule is applicable to evidence admitted in violation of *Miranda*. *United States v. Street*, 472 F.3d 1298, 1314-15 (11th Cir. 2006) (citing *United States v. Arbolaez*, 450 F.3d 1283, 1292-93 (11th Cir. 2006)). "The question is whether, after we subtract the statements that should not have been admitted at [] trial, the remaining evidence is so overwhelming that we are convinced beyond a reasonable doubt that the improperly admitted evidence did not affect the verdict." *Id.* at 1315 (citing *United States v. Adams*, 1 F.3d 1566, 1576 (11th Cir. 1993)). The burden of proving that a constitutional error was harmless is on the government. *Chapman v. California*, 386 U.S. 18, 24 (1967).

## III. DISCUSSION

We need not decide the constitutional issue presented in this case. Assuming, *arguendo*, that the district court erred in admitting Lee's unwarned statement to Deputy Busbee, we conclude that such an error would be harmless under *Chapman*. *See Wyzykowski v. Dep't of Corr.*, 226 F.3d 1213, 1218-19 (11th Cir. 2000) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions

6

of constitutionality . . . unless such adjudication is unavoidable.").  Specifically, we find that, subtracting the statement at issue, the remaining evidence was so overwhelming that we are convinced beyond a reasonable doubt that the evidence did not affect the verdict.  *Street*, 472 F.3d at 1315.

At trial, the jury heard the testimony of Ms. Smith and Mr. Williams, both of whom testified that Lee retrieved a handgun from his car during an argument, hit Williams in the face with it, and tossed it into the woods when he saw the police coming.  R. 78 at 58-61, 111-120.  Deputy Busbee testified that he saw Lee toss a heavy, dark object into the woods as he arrived on the scene.  *Id.* at 70-72.  The jury also heard the testimony of the canine officer–Deputy Kessel–that a handgun was found in the same area where Smith and Williams indicated that Lee tossed it and where Deputy Busbee saw Lee toss an object.  *Id.* at 101-02.  Deputy Kessel testified that the handgun was dry and clean, and was laying unobstructed on the ground as if it had just been discarded there.  *Id.* at 102, 104.  Perhaps most importantly, Lee himself testified at trial.  Lee testified that the gun found in the wooded area did not belong to him, but belonged to Williams instead.  *Id.* at 170-75.  Lee admitted throwing an object into the wooded area, but claimed that the object he threw was a cannister containing crack cocaine, and not the gun found by the canine.  *Id.* at 191-94.

7

It is obvious from the verdict reached that the jury disbelieved Lee's version of events, and it was entitled to do so. In *United States v. Brown*, we held that "a statement by a defendant, if disbelieved by the jury, may be considered as *substantive evidence* of the defendant's guilt." 53 F.3d 312, 314 (11th Cir. 1995) (emphasis in original). The court in *Brown* went on to hold that "when a defendant chooses to testify, he runs the risk that if disbelieved the jury might conclude the opposite of his testimony is true." *Id.* (quotation marks and internal citations omitted). Finally, the court in *Brown* held that "[a]t least where some corroborative evidence of guilt exists for the charged offense . . . and the defendant takes the stand in his own defense, the defendant's testimony, denying guilt, may establish, by itself, elements of the offense." *Id.* at 314-15. Because there was corroborating evidence of guilt in this case, when Lee took the witness stand and denied possessing a firearm, the jury was entitled to disbelieve him and, based on that alone, conclude that he did, in fact, possess the firearm in question.

In sum, after subtracting the statement in question, the remaining evidence was so overwhelming that we are convinced beyond a reasonable doubt that the evidence did not affect the verdict. Accordingly, under *Chapman*, any error that occurred below would be harmless. *Street*, 472 F.3d at 1315. We therefore affirm Lee's conviction.

8

AFFIRMED.

BLACK, Circuit Judge, specially concurring:

I concur in the result. I write separately because I would affirm Lee's conviction under *United States v. Castro*, in which we held that a voluntary statement made after an unwarned custodial interrogation had commenced was admissible. 723 F.2d 1527, 1530–32 (11th Cir. 1984).