**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 24-13797

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

BRENT MICHAEL JONES,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:23-cr-20382-MD-1

————————————

Before NEWSOM, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Brent Michael Jones appeals his conviction for possessing a firearm and ammunition as a felon. Jones argues that the district court erred in denying his motion to dismiss his indictment because

18 U.S.C. § 922(g)(1) is facially unconstitutional under the Commerce Clause and specifically as applied to him. He also argues that the district court erred in denying his motion to suppress regarding statements he made after receiving warnings under *Miranda v. Arizona*, 384 U.S. 436 (1966), because he did not voluntarily waive his rights or make the statements. Finally, Jones argues that the district court abused its discretion by denying his motion for a mistrial after a government witness violated the district court's pretrial ruling multiple times, thereby unduly prejudicing him before the jury. For the reasons stated below, we affirm.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On the night of March 17, 2023, law enforcement received an alert about a stolen vehicle entering Miami-Beach. City of Miami Beach Detective Anthony Yarusso responded and followed the stolen vehicle without activating the lights and sirens on his unmarked car, for approximately two minutes. Eventually, a marked police vehicle activated its lights and sirens and Jones, the driver of the stolen vehicle, sped away until he encountered heavy foot traffic. Forced to stop, Jones abandoned the vehicle and attempted to flee on foot until falling and being apprehended by Detective Leon Paige. Returning with Jones to the abandoned vehicle, law enforcement found a single female passenger in the car. Law enforcement picked Jones up and walked him over to the female passenger, putting both of them on the curb.

Jones repeatedly asked the officers what he had done and why he was in trouble. Jones confirmed that he was the driver of

the vehicle and he also admitted that it was not his vehicle. Jones also, in response to a question, told law enforcement that he did not have cocaine on him, but did have "molly" which he took for his PTSD and anxiety. He further told law enforcement that "someone stole all of his identification information." In response, Detective Paige asked Jones if he wanted to go home. When Jones replied affirmatively, Detective Paige told him "Right now, you are going to be under arrest. So listen to me. The quicker we get your information and get you processed, the quicker you are going to get home." Detective Paige continued, "give me what you are going to give me; and I am going to look you up." Jones again asked, "Is this a federal case?" Law enforcement told him, "You had drugs on you and a gun." Jones replied, "That was for protection." Jones instructed law enforcement, "Tell him to write that shit up right, bro. That shit is constructive possession man. That shit wasn't on me." "What wasn't on you," the police officer responded. Jones clarified: "the gun."

Five minutes later, Detective Yarusso and a second officer escorted Jones to a police vehicle for a ride back to the police station. Detective Yarusso asked Jones a single question: "What kind of felonies you got?" and Jones replied that he had a prior felony for armed kidnapping and aggravated battery.

The detectives then transported Jones back to the station where he provided consent to give DNA. DNA analysis would later show that there was a 1 in 196.6 octillion chance that the DNA belonged to someone other than Jones. Two hours later, Detective

Yarusso interviewed Jones. The room was calm and well-lit. Detective Yarusso confirmed that Jones was lucid and had attended some college. Detective Yarusso orally advised Jones of his *Miranda* rights, and Jones read and signed the *Miranda* waiver form. Jones gave Detective Yarusso long and detailed answers, often without prompting.

## A. Indictment and Motion to Dismiss

On September 26, 2023, a federal grand jury in the Southern District of Forida indicted Jones for one count of possessing a firearm and ammunition as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Jones moved to dismiss the indictment arguing that § 922(g)(1) was unconstitutional, both facially and as applied, because it exceeded Congress's power under the Commerce Clause. He conceded that his challenged was barred by this Court's precedent but he argued that those cases were wrongly decided because *United States v. Lopez*, 514 U.S. 549 (1995) clarified that Congress's Commerce Clause power did not extend to non-economic, intrastate criminal activity unless the activity "substantially affect[ed]" the interstate commerce which possession of a firearm by a convicted felon did not.

After an evidentiary hearing—in which both sides agreed the firearm in question was manufactured outside of Florida—a magistrate judge issued a report and recommendation ("R&R") recommending that the motion be denied based on binding precedent in this Circuit. Jones objected to preserve his challenge. The district court adopted the report and denied the motion.

### B.  Motion to Suppress

Jones also moved to suppress the statements he made to police.  He alleged that the statements were involuntarily obtained in violation of his Fourth and Fifth Amendment rights.

The parties proceeded to an evidentiary hearing before the magistrate judge.  Shortly before the hearing, the United States obtained additional body-worn camera which it produced to Jones.  The magistrate judge adjourned the hearing and ordered supplemental briefing.  In his supplemental briefing, Jones argued that his statements both before and after he received *Miranda* warnings should be suppressed because he was custodially interrogated and his statements were not voluntary.  The government argued that Jones's statements were admissible because, before receiving *Miranda* warnings, Jones's statements did not respond to an interrogation, and, after receiving *Miranda* warnings he understood, his statements were made voluntarily.  The government stated that the new body-worn camera video showed that the police did not coerce Jones into making statements.

After an evidentiary hearing, the magistrate judge issued an R&R recommending that the motion to suppress as to the pre-*Miranda* statements be granted as involuntary and that the motion be denied as to the post-*Miranda* statements.  As to the pre-*Miranda* statements, the magistrate judge concluded that law enforcement's statement to Jones—that if he wanted to go home sooner, he should provide information—made Jones's pre-*Miranda* statements involuntary.

As to the post-*Miranda* statements, though, the magistrate judge found that law enforcement had not engaged in the "question-first and warn later" which would invalidate a *Miranda* warning. The magistrate judge relied on the fact that "that [Jones] made only a single brief incriminating statement in the prewarning stage of the interview, the complete interrogation of [Jones] that followed the warnings bore little resemblance to his prewarning statement. Moreover, the two interactions also took place in different locations, and with approximately a two-hour gap between them." As to the voluntariness, the magistrate judge found that Jones's waiver was voluntary although "perhaps only by a hair." "Having viewed the videos from both scenes," the magistrate judge wrote, "I find that the Government has met its burden to show that the post-*Miranda* statement given by [Jones] was voluntarily made." The magistrate judge also noted that Jones had only an extremely brief interaction with Detective Yarusso before interrogation and that the latter interrogation "bore little resemblance to his prewarning statement." The magistrate judge further emphasized that "the two interactions also took place in different locations, and with approximately a two-hour gap between them." And Jones was "was lucid and capable of understanding his rights" and he reviewed each right, which [Jones] acknowledged and initialed" on the form. The arrest scene, the magistrate judge found, was "calm" and "without . . . any promises of leniency." It was in "a different, well-lit office environment," and Jones was "very responsive" to questioning.

Both sides objected.

The district court adopted the magistrate judge's R&R.  On the record, the district court noted that "I'm deferring to [the magistrate judge] because she was there and she heard all the testimony and, you know, held the hearing.  She probably suppressed a little more than I might have."  The district court continued, "and I'm just telling you that, because, you know, if anything, it wasn't going to be more to the defense's benefit, but I am adopting and affirming.  I agree with all of her reasoning."

## C. Motion in Limine

Before trial, the government moved *in limine* to introduce evidence that Jones was driving a stolen car to explain why law enforcement stopped the car and why officers acted enthusiastically in arresting Jones.  Jones opposed, arguing that law enforcement could testify that he was stopped for a traffic violation.

At calendar call, the district court granted the government's motion *in limine* to permit evidence that Jones was driving a stolen car because it was intrinsic as to why the police followed him and stopped him and was not unduly prejudicial.  After the district court ruled, Jones asked to modify the ruling such that the car would be reported stolen (rather than actually being stolen).  After the hearing, the district court issued an order granting the request to permit evidence that Jones was driving a stolen car.

## D. Trial

At the beginning of trial, the parties stipulated to the fact that Jones was a felon prohibited from possessing a firearm or ammunition under federal law and that he knew as such.

The government then called Detective Paige as a witness. He described receiving a license plate reader alert that a stolen vehicle was crossing the bridge into Miami Beach. When asked what Detective Paige knew about the vehicle at the time when it was located, he stated, "All I know about the vehicle is that it's stolen." Jones's attorney objected to the testimony as violating the district court's ruling on the government's motion *in limine*. The district court overruled the objection, noting, "I think he's within the scope of the ruling." Jones asked for a sidebar, and the United States offered to clarify the testimony. The district court responded, "I don't believe you have any intention to, but if you don't need to," but Jones took the United States up on its offer to clarify that the car was reported stolen, not actually stolen. The United States asked, "So what you knew at that point is that the car was reportedly stolen, right? That's all you knew, it was a report." Detective Paige replied "I knew that car was stolen" when Jones objected. The district court sustained the objection and struck the testimony. The government then asked, "so the [license plate reader] gave you a report; is that right?" Detective Paige responded "correct." Detective Paige further described how he attempted to stop the vehicle—using lights and sirens—but it drove "recklessly" away from him, including onto the curbside.

The government then introduced Detective Paige's body-worn camera. At one point, the government asked Detective Paige, "so on the right hand of the screen, what are we looking at?" He responded, "You're looking at the stolen vehicle, the gray in-

finiti Q50." Jones again objected, and the district court again sustained the objection, again struck the testimony, and instructed the jury and the officer that the vehicle was merely reported—not actually—stolen. Jones asked for a sidebar and then moved for a mistrial, arguing that "the Government has flagrantly ignored the Court's order . . . So much attention on the stolen vehicle, it's in violation of Your Honor's pre-trial order's [sic]. It's certainly risen to the level of unduly [sic] prejudice[.]"

The district court denied the motion, concluding that the testimony was not a violation of the motion *in limine* order. The court emphasized that the concern of the motion *in limine* was the suggestion that the defendant stole the vehicle and "nobody is suggesting that [Jones] stole the vehicle." Jones did not ask any cross-examination questions to clarify the fact that Detective Paige had no information whether Jones had stolen the car.

The jury returned a verdict of guilty as to the sole count, § 922(g)(1). The district court sentenced Jones to 27 months incarceration and 36 months supervised release. Jones was released from custody on September 11, 2025 and will finish supervision on or about September 10, 2028.

## II.

On appeal, Jones argues that § 922(g)(1) is unconstitutional under the Commerce Clause on its face and as applied to his intrastate possession of a firearm. We review a preserved challenge to the constitutionality of § 922(g) *de novo*. *United States v. Jimenez-Shilon*, 34 F.4th 1042, 1043 (11th Cir. 2022).

We have repeatedly held that § 922(g) is a valid exercise of Congress's power under the Commerce Clause. *See e.g.*, *United States v. Edwards*, 142 F.4th 1270, 1285 (11th Cir. 2025); *Wright*, 607 F.3d at 715–16; *United States v. Scott*, 263 F.3d 1270, 1273 (11th Cir. 2001); *United States v. McAllister*, 77 F.3d 387, 390 (11th Cir. 1996). And we have held that a conviction under § 922(g)(1) is constitutional "as long as the weapon in question has a 'minimal nexus' to interstate commerce." *Scott*, 263 F.3d at 1274. That interstate nexus is met with evidence "that the firearm possessed traveled in interstate commerce." *Id.* Jones objects to this line of precedent, but he does not dispute that the firearm in this case was manufactured out of state and thus satisfied the minimal interstate nexus our precedent requires. *See Wright*, 607 F.3d at 715–16 (holding that the nexus requirement was satisfied where the firearm was manufactured outside the state in which the offense took place).

For these reasons, we affirm the district court's denial of Jones's motion to dismiss the indictment.

### III.

Jones next argues that the district court erred by denying his motion to suppress by finding that Jones's post-*Miranda* statements were voluntary. We review the denial of a motion to suppress as a mixed question of law and fact, with conclusions of law reviewed *de novo* and findings of fact reviewed for clear error. *United States v. Thomas*, 160 F.4th 1177, 1181 (11th Cir. 2025). Facts are construed in the light most favorable to the party that prevailed in the

district court. *Id.* We review *de novo* whether a statement was voluntary, giving deference to the district court's factual findings. *United States v. Lall*, 607 F.3d 1277, 1285 (11th Cir. 2010). The government must establish voluntariness by a preponderance of the evidence. *Id.*

The Supreme Court's *Miranda* decision protects a defendant's Fifth Amendment right against self-incrimination by requiring that law enforcement officers advise the person subject to custodial interrogation of certain rights and to respect the person's invocation of those rights. *United States v. Woods*, 684 F.3d 1045, 1055 (11th Cir. 2012). A defendant may waive these rights if the waiver is voluntarily, knowingly, and intelligently given. *United States v. Bernal-Benitez*, 594 F.3d 1303, 1318 (11th Cir. 2010). Voluntariness requires that the waiver must be the result of "a free and deliberate choice, rather than intimidation, deception, or coercion." *Id.* (quoting *Moran v. Burbine*, 475 U.S. 412, 420 (1986)). In making this determination, Courts rely on a two-part test. *Moran*, 475 U.S. at 412.

First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. *Id.* (citing *Fare v. Michael C.*, 442 U.S. 707, 725(1979)). Second, the waiver must have been made with full awareness of both the nature of the right being abandoned, and the consequences of the decision to abandon it. *Id.* In this connection, the Court may consider the defendant's education, age, intelligence, the length of detention, the prolonged nature of detention and the defendant's health. *Bernal-*

*Benitez*, 594 F. 3d at 1319.   In sum, a court may conclude that the *Miranda* rights were waived only if "the totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension.  *Id*. at 1318.

"While the failure to comply with *Miranda* creates a presumption that a confession was not voluntary, an examination of the totality of the circumstances is necessary to determine whether the confession was actually voluntarily given."  *Lall*, 607 F.3d at 1285.   Threats of violence or promises of leniency can render a statement involuntary.  *Id*.  The use of deception to obtain a confession is an important factor when considering the totality of the circumstances.  *Id*.   While misrepresentations of fact are not enough to render a suspect's subsequent confession involuntary or to undermine a suspect's *Miranda* waiver, misrepresentations of law are more likely to render a confession involuntary.  *Id*.

In *Lall*, we held that a promise rendered the defendant's subsequent confession involuntary because it completely undermined the previously administered *Miranda* warning's prophylactic effect where a law enforcement officer promised a defendant that nothing he said would be used to prosecute him.  *Id*. at 1287.  In contrast, in *Nash*, we held that an officer had not illegally induced the defendant's ensuing confession where a law enforcement officer promised to make it known to the prosecutor that the defendant had cooperated, encouraged the defendant to tell the truth, and stated that defendants who cooperate generally received better sentences.  *United States v. Nash*, 910 F.2d 749, 752-53 (11th Cir.

1990). Because the officer had not promised that the defendant would receive a reduced sentence, we stated that the officer had only afforded the defendant the opportunity to make an informed decision regarding the advantages of cooperating with the government. *Id.*

The admission of statements in violation of *Miranda* is subject to harmless error review. *United States v. Arbolaez*, 450 F.3d 1283, 1292 (11th Cir. 2006), *abrogated on other grounds by*, *United States v. Bryant*, 562 U.S. 344, 355 (2011). The question is whether there is a reasonable possibility that the complained-of evidence might have contributed to the conviction. *Id.* This determination requires an inquiry into the effect of the erroneously admitted statement upon (1) the other trial evidence and (2) the conduct of the defense. *Id.* at 1293. An erroneous admission of a coerced confession can be harmless error. *Arizona v. Fulminante*, 499 U.S. 279, 295 (1991).

The district court did not err in denying part of Jones's motion to suppress because he voluntarily waived his *Miranda* rights and voluntarily made his subsequent confession. While Jones argues that he did not voluntarily waive his *Miranda* rights due to the chaotic scene of his arrest, the influence of his PTSD, and the promise Detective Paige made at the scene, over two hours had passed from that scene and Detective Paige's promise to when Detective Yarusso issued his *Miranda* warning and Jones signed the *Miranda* waiver at the police station. *Lall*, 607 F.3d at 1285. Similarly, De-

tective Yarusso's promises of leniency did not limit the voluntariness of his preceding confession because they happened after his *Miranda* waiver and statements and were not considered by the magistrate judge since the government did not seek to introduce any of Jones's statements from after Detective Yarusso brought up guns. *Lall*, 607 F.3d at 1285. Further, under the totality of the circumstances at the time Jones signed the *Miranda* waiver, Jones voluntarily waived his *Miranda* rights, as shown by Detective Yarusso explicitly informing Jones he was under arrest and what his charges were, Detective Yarusso gauging Jones's understanding by asking his education, and Detective Yarusso reading off the *Miranda* waiver and not making any promises or misrepresentations. *Bernal-Benitez*, 594 F.3d at 1318.

Jones's subsequent confession was similarly voluntary, as shown by the totality of the circumstances. Less than five minutes passed between Jones signing the *Miranda* waiver form and Detective Yarusso asking his first question, with Jones then voluntarily describing why he felt the need to possess a gun and that he bought the revolver two weeks prior, and Detective Yarusso making no promises threats, or misrepresentations to Jones between signing the *Miranda* form and Jones's confession. *Lall*, 607 F.3d at 1285; *Nash*, 910 F.2d at 752–53.

Nevertheless, even if the district court erred in admitting the confessions, any error was harmless beyond a reasonable doubt. *Arbolaez*, 450 F.3d at 1292; *Fulminante*, 499 U.S. at 310. The jury heard testimony that Jones was driving the car where the revolver

was found near the driver's seat, his DNA was present on the revolver, he later admitted to possessing the revolver on recorded phone calls, and the revolver and ammunition had traveled through interstate commerce, and the parties stipulated that Jones knew he was a felon and prohibited from having a firearm. Given all the other evidence the jury heard that supported Jones's guilt, his confession to Detective Yarusso the night of the arrest was functionally cumulative to proving his guilt, making any possible error in admitting Jones's post-*Miranda* statements harmless beyond a reasonable doubt. *Arbolaez*, 450 F.3d at 1292; *Fulminante*, 499 U.S. at 310; 18 U.S.C. § 922(g)(1); *Elysee*, 993 F.3d at 1345.

Accordingly, we affirm the court's denial of Jones's motion to suppress his post-*Miranda* statements.

## IV.

Finally, Jones appeals the district court's denial of his mistrial motion because he claims that Detective Paige's testimony violated the court's motion *in limine* ruling multiple times by describing the car as stolen. We review the denial of a motion for a mistrial for abuse of discretion. *United States v. Morgan*, 143 F.4th 1264, 1279 n.8 (11th Cir. 2025), *petition for cert. filed*, (U.S. Jan. 8, 2026) (No. 25-6520). Because a trial judge is in the best position to evaluate the prejudicial effect of a particular statement, it is within that judge's discretion to grant a mistrial. *United States v. Delgado*, 321 F.3d 1338, 1346-47 (11th Cir. 2003). A mistrial should be granted where the defendant's substantial rights are prejudicially affected. *Morgan*, 143 F.4th at 1279. Such prejudice occurs when there is a

reasonable probability that, but for the objected-to testimony, the outcome of the trial would have been different.  *Id.*

When a district court gives a curative instruction, we may reverse only if the evidence was so highly prejudicial that it was incurable by the instruction.  *Id.*  We assume that juries follow the instructions of the trial judge. *United States v. Kennard*, 472 F.3d 851, 858 (11th Cir. 2006).  Prejudicial testimony does not require a mistrial if "there is significant evidence of guilt which reduces the likelihood that the otherwise improper testimony had a substantial impact on the jury." *United States v. Pulido*, 133 F.4th 1256, 1278 (11th Cir.) (quoting *United States v. Anderson*, 782 F.2d 908, 916 (11th Cir. 1986)), *cert. denied*, 146 S. Ct. 396 (2025).  In *Morgan*, we held that the district court did not abuse its discretion in refusing to grant a mistrial where a witness made statements that had been suppressed by a pre-trial ruling, because the district court effectively cured any prejudice with an instruction, and other evidence supported the defendant's guilt such that his substantial rights had not been violated.  *Morgan*, 143 F.4th at 1279-80.

The cumulative error doctrine provides for a reversal where an aggregation of non-reversible errors yields a denial of the constitutional right to a fair trial. *United States v. Capers*, 708 F.3d 1286, 1299 (11th Cir. 2013).  The district court's refusal to grant a mistrial based on a particular error at trial may itself be one such non-reversible error that, when combined with other errors, warrants reversal.  *Id.*  A defendant may also move for a mistrial in the district

24-13797               Opinion of the Court                    17

court based on cumulative error. *United States v. Ramirez*, 426 F.3d 1344, 1352 (11th Cir. 2005).

Here, we conclude that the district court did not abuse its discretion by denying Jones's request for a mistrial based on Detective Paige referring to the car as stolen three times. First, it is unclear that Detective Paige's testimony was even in violation of the court's *in limine* ruling. The district court was focused on whether the government would accuse Jones of or suggest that he stole the car he was driving and did not split hairs over whether the government presented evidence that the car "was stolen," as opposed to "reported stolen." Jones also had the opportunity to clarify that he did not steal the car on cross-examination, but he failed to do so.

In any case, even assuming that Detective Paige violated the district court's ruling by referring to the car as "stolen," as opposed to "reportedly stolen," or that the subsequent evidence created a cumulative error, the district court did not abuse its discretion in determining that the testimony and evidence did not affect Jones's substantial rights. *Morgan*, 143 F.4th at 1279-80; *Capers*, 708 F.3d at 1299; *Delgado*, 321 F.3d at 1346-47. Given the other evidence presented at trial, there is no reasonable probability that, but for the objected-to testimony or subsequent evidence, the outcome of the trial would have been different. *Pulido*, 133 F.4th at 1278. As discussed above, the jury heard testimony and a stipulation—not implicated by Jones's suppression motion or the district court's *in limine* ruling—that established the necessary elements, showing

that Jones possessed the firearm and knew he was a felon and prohibited from having a firearm, such that it is not reasonable to assume that the jury hearing passing remarks that the car he was driving was stolen affected the outcome of the trial.

Moreover, the district court's curative instruction, which this Court assumes the jury followed, increases the showing of prejudice necessary to require reversal, which he similarly did not meet. *Morgan*, 143 F.4th at 1279-80; *Kennard*, 472 F.3d at 858. We thus affirm the district court's denial of Jones's motion for a mistrial.

## V.

For the reasons discussed, we affirm Jones's conviction for possessing a firearm and ammunition as a felon.

**AFFIRMED.**