[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13584
Non-Argument Calendar

_____

D.C. Docket No. 2:19-cr-00057-ECM-SRW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

OSIE LEE DAVIS,
a.k.a. Ossie Lee Davis,
a.k.a. Osie Lee Davis, Jr,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(May 4, 2021)

Before WILSON, JILL PRYOR, and LUCK, Circuit Judges.

PER CURIAM:

Osie Lee Davis appeals his convictions for possessing a firearm and ammunition as a convicted felon and possessing a firearm in furtherance of a drug trafficking crime. Davis argues that the district court erred by admitting testimony about where his stepson was the day Davis was arrested because it was inadmissible hearsay and it violated the Confrontation Clause. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On January 31, 2017, Officer Bryan Baldwin stopped Davis for driving without headlights in Troy, Alabama. Because Davis had two outstanding warrants, Officer Baldwin arrested Davis and searched him. During the search, Officer Baldwin found three bags of marijuana, seven bags of powder cocaine, a bag of crystal meth, thirty-nine Clonazepam pills, and forty methamphetamine pills. Officer Baldwin also searched Davis's car and found a loaded handgun between the driver's seat and the center console. After Officer Baldwin read Davis his Miranda rights, Davis told Officer Baldwin that the gun belonged to his stepson, Christopher Taylor, who must have left it in the car earlier that day.

Davis was indicted for possessing a firearm and ammunition as a convicted felon, possessing a firearm in furtherance of a drug trafficking crime, and six counts of possessing controlled substances with intent to distribute them.[1] The case proceeded to trial.

---

[1] Specifically, Davis was indicted for: (1) possessing methamphetamine with intent to

2

At trial, Davis contested only the gun charges.  He admitted that he possessed the methamphetamine, cocaine, Clonazepam, and marijuana and that he was selling the drugs.  However, Davis contended that the gun belonged to his stepson, Taylor, and that he didn't know the gun was in the car when he was stopped.  Five witnesses testified about the gun.

First, Officer Baldwin testified that he searched Davis's car and found the gun stuffed between the driver's seat and the center console with the top of the gun resting against the car floor.  The government then introduced video footage of the search from Officer Baldwin's body camera.  The video showed that Davis was the only person in the car and that the gun was visible between the driver's seat and the center console.

Second, Brenda Annette Davis, Davis's older sister, testified that Davis was driving her car when he was stopped, but she didn't put the gun in the car.  Brenda Davis also testified that she let Davis drive her car every once in a while because he did not have his own.

Third, Davis's stepson, Taylor, testified that the gun was his, but he didn't leave it in the car because he wasn't in Troy when Davis was arrested.  Taylor testified that Davis told him the gun was stolen in late 2016, while Taylor was in

---

distribute; (2) two counts of possessing powder cocaine with intent to distribute; (3) possessing Clonazepam with intent to distribute; and (4) two counts of possessing marijuana with intent to distribute.  He does not challenge these convictions on appeal.

Mississippi, and Taylor hadn't seen it since then. Taylor testified that he was in Brooksville, Florida when Davis was arrested on January 31, 2017 and only returned to Alabama five days later. He also testified that Davis asked him to "claim the gun," but he didn't because he "didn't know what gun it was." On cross-examination, the defense asked Taylor where he told Special Agent Van Der Westhuizen of the Bureau of Alcohol, Tobacco, Firearms and Explosives he was when the gun was found. Taylor admitted that he initially told Agent Van Der Westhuizen that he was in Mississippi when Davis was arrested, not Florida. Taylor testified that he didn't lie to her, but he "had to go back and check [his] dates."

Fourth, Devin White, an investigator with the Alabama Board of Medical Examiners and a former Drug Enforcement Administration agent, testified that, based on his training and twenty-three years of experience, a gun was "almost a necessary tool for a drug trafficker" because "drug traffickers want to protect their product and they want to protect their assets." Investigator White also testified that drug traffickers "use firearms to intimidate" their competition and people who owe them money and to "dominate a particular geographical area that they're trying to sell in."

Fifth and finally, Agent Van Der Westhuizen testified about her investigation, including her interviews with Davis and Taylor. During direct examination, the government asked Agent Van Der Westhuizen:

4

[Prosecutor]: During your interview with Mr. Taylor—we heard testimony yesterday that Mr. Taylor was not in Troy on January 31st, 2017. Were you able to gather information other than from Mr. Taylor that that, in fact, was a true statement?

[Witness]:    That's correct.

[Defense]:    Objection.  Hearsay, Your Honor.

The Court:    What's your response?

[Prosecutor]: Your Honor, she—this is part of her interview.

The Court:    But it is hearsay.  It's what Mr. Taylor is alleged to have said.

[Defense]:    It's what someone else other than Mr. Taylor is alleged to have said.

The Court:    All right. Sustained.  Rephrase your question.

[Prosecutor]: Based on your investigation, was Mr. Taylor in Troy on that day?

[Defense]:    Objection, Your Honor.  Trying to get the same answer out through another witness.

The Court:    Well, he's asking her what she discovered during the investigation, so I'm going to allow that.

[Witness]:    No, he was not in Troy, based on my investigation.

Agent Van Der Westhuizen also testified that, during her interview with Davis, Davis admitted that he'd used Taylor's gun "plenty of times" and "typically sold powder cocaine to some of the students at Troy [University]" and around the Troy area.  Finally, Agent Van Der Westhuizen testified that Davis was previously

5

stopped in 2016 and that during the stop the police found Davis with another of Taylor's guns that had been stolen.

The jury found Davis guilty of all charges. The district court sentenced Davis to three hundred sixty months' imprisonment and six years of supervised release. Davis appeals only his firearm convictions.

## STANDARD OF REVIEW

We review for an abuse of discretion the district court's decision to admit Agent Van Der Westhuizen's statements over Davis's hearsay objection. United States v. Arbolaez, 450 F.3d 1283, 1289–90 (11th Cir. 2006). We ordinarily review de novo whether testimony violates the Confrontation Clause. Id. However, where the defendant does not object to the admission of hearsay on Confrontation Clause grounds, we review its admission for plain error. Id. at 1291. Under plain error review, we may not correct an error unless "there is: (1) error, (2) that is plain, and (3) that affects substantial rights." United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005). If all three conditions are met, we may only correct the forfeited error "if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. "[F]or an error to have affected a defendant's substantial rights, there must be 'a reasonable probability that, but for the error,' the outcome of the proceeding would have been different." United States v. McLellan, 958 F.3d

6

1110, 1119 (11th Cir. 2020) (quoting Molina-Martinez v. United States, 136 S. Ct. 1338, 1343 (2016)) (alterations adopted).

## DISCUSSION

Davis argues that the district court abused its discretion by admitting, over his hearsay objection, Agent Van Der Westhuizen's testimony that his stepson, Taylor, was not in Troy, Alabama when the gun was found. Davis also argues for the first time on appeal that Agent Van Der Westhuizen's testimony violated the Confrontation Clause.

### *Hearsay*

We will assume (without deciding) that the district court abused its discretion by admitting Agent Van Der Westhuizen's testimony. Even so, erroneously admitted hearsay "does not mandate a reversal of conviction: to require a new trial a significant possibility must exist that, considering the other evidence presented by both the prosecution and the defense, the statement had a substantial impact on the verdict of the jury." Arbolaez, 450 F.3d at 1290 (quoting United States v. Rodriquez, 524 F.2d 485, 487 (5th Cir. 1975) (per curiam)) (cleaned up). In other words, "[h]earsay errors are harmless if, viewing the proceedings in their entirety, a court determines that the error did not affect the verdict, or had but very slight effect." United States v. Cooper, 926 F.3d 718, 730 (11th Cir. 2019) (quoting United States v. Magluta, 418 F.3d 1166, 1180 (11th Cir. 2005)). Here, on the only contested issue

at trial—whether Davis knowingly possessed the gun found in his car—Agent Van Der Westhuizen's testimony had no "substantial impact" on the jury's verdict. See Arbolaez, 450 F.3d at 1290. The hearsay error had no substantial impact on the jury's verdict for seven reasons.

First, where Taylor was when Davis was pulled over was not relevant to whether Davis knew there was a gun sticking out between the driver's seat and the center console. Whether Taylor was in Troy didn't make it more or less likely that Davis knew the gun was in the car when he was stopped.

Second, even without the hearsay, the evidence was undisputed that Taylor was not in Troy when Davis was pulled over. The hearsay only repeated Taylor's testimony, which the jury heard and which was unrebutted, that he was not in Troy when Davis was arrested.

Third, Taylor didn't put the gun in the car because it was stolen in December 2016, two months before Davis was stopped with the gun on January 31, 2017.

Fourth, Davis having previously been found in possession of another one of Taylor's "stolen" guns was strong evidence that he knew the gun was in the car on January 31, 2017. See United States v. Jernigan, 341 F.3d 1273, 1283 (11th Cir. 2003) (holding that prior crimes involving "knowing possession of a weapon . . . bear on [defendant's] knowledge that a gun was present in his [vehicle] just as [co-defendant]'s prior convictions bore on [co-defendant]'s knowledge of this fact").

8

Fifth, the ammunition found in the gun when Davis was stopped was not the kind of ammunition Taylor used.

Sixth, as Officer Baldwin testified and the body-camera video showed, Davis was the only one in the car when he was stopped. The video showed that the gun was immediately visible when Officer Baldwin searched the car. Davis also used the car as his personal vehicle, and Davis had easy access to the gun because it was stored between the driver's seat and the center console. See United States v. Gates, 967 F.2d 497, 499 (11th Cir. 1992) (holding that defendant had knowing possession of guns found underneath the driver's seat of the car he was driving); United States v. Gonzalez, 71 F.3d 819, 835 (11th Cir. 1996) ("[Defendant's] presence in the [car], with ready access to the [gun] later discovered in the glove compartment, was sufficient to prove that he possessed the [gun] . . . irrespective of the fact that the [gun] belonged to a third person."), abrogated on other grounds by Arizona v. Gant, 556 U.S. 332, 335 (2009); United States v. Haile, 685 F.3d 1211, 1219 (11th Cir. 2012) (concluding that a defendant knowingly possessed a gun where "[t]he gun for which [the defendant] had a license was loaded in the center console, readily accessible from the front seat").

And, seventh, a former Drug Enforcement Administration agent explained that a gun was "almost a necessary tool for a drug trafficker." Davis, by his own admission, was trafficking drugs in the Troy area.

9

*Confrontation Clause*

Davis also contends that Agent Van Der Westhuizen's testimony that Taylor was not in Alabama violated the Sixth Amendment's Confrontation Clause. Although Davis objected to Agent Van Der Westhuizen's testimony as inadmissible hearsay, he didn't object on Confrontation Clause grounds, so we review only for plain error. See Arbolaez, 450 F.3d at 1291 n.8 ("A hearsay objection to testimony at trial, standing alone, does not preserve a constitutional challenge under the Confrontation Clause for appeal."). Even if we assume that the district court erred and that error was plain, Davis's challenge fails on the third prong of plain error review because, as we discussed above, there was substantial evidence—even excluding Agent Van Der Westhuizen's testimony—for the jury to find that Davis knowingly possessed the gun. Because we already found that Davis has not met the harmless error standard, he necessarily cannot meet the more difficult third-prong of the plain error test. See United States v. Margarita Garcia, 906 F.3d 1255, 1267 (11th Cir. 2018) ("The burden placed on the defendant under plain error is heavy. As we have said, 'the plain error test is difficult to meet, and in particular, the burden of showing prejudice to meet the third-prong requirement is anything but easy.' It is, quite simply, a far less defendant-friendly standard than harmless error." (citations omitted)). Thus, Davis has not shown a "reasonable probability that, but

10

for the error, the outcome of the proceeding would have been different." <u>McLellan</u>,

958 F.3d at 1119 (quotation marks omitted).

**AFFIRMED.**