[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10208

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JERALD SELLS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:20-cr-00076-JB-B-1

_____

Before NEWSOM, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Jerald Sells appeals his convictions for aggravated sexual abuse of a minor and transportation of a minor with intent to engage in criminal sexual activity.

On April 12, 2019, Sells's daughter, Maya,[1] arrived at her middle school upset and crying. After speaking with Maya about why she was upset, a school counselor called the Mobile County Sheriff's Office. Detective Sheffield responded to the call and spoke with Maya in private. Maya disclosed to him that Sells had sexually abused her. Sheffield then went to Sells's house. He met Sells in the front yard and Sells, who was already aware of the allegations, allowed Sheffield into the house. Sells was not placed under arrest at that point and was told he was free to terminate the conversation at any time. Sheffield also informed Sells of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). When Sells mentioned needing a lawyer, Sheffield ended their conversation.

A few days later, Sells called Sheffield and said that he wanted to make a statement. Sheffield reiterated to Sells that any statement would be voluntary, Sells did not have to make a statement, and Sells would still have his *Miranda* rights. Sheffield met with Sells the next day, April 25, at Sells's house. Sheffield read

---

[1] To protect the child's identity, we don't use her real name here.

Sells the *Miranda* warnings, Sells signed a *Miranda* waiver, and then they talked about Maya's allegations, which Sells denied. At the end of their conversation, Sheffield offered Sells the opportunity to take a voluntary polygraph examination—to help "prove his innocence"—which Sells later agreed to take.

On May 15, Sells voluntarily traveled to the police station to undergo a polygraph test. After arriving at the station, Sells signed yet another *Miranda* waiver form indicating that he had read and understood his rights. He then underwent a recorded pre-polygraph interview conducted by Sergeant Gomien. Sells "was repeatedly assured that the interview was voluntary."

During that interview, Sells admitted that he had sexually abused his daughter. We will spare the details other than to say that Sells's account was, for the most part, consistent with what Maya had previously revealed to Sheffield. Afterwards, Sells was left in the interview room, unrestrained for about 40 minutes, before Gomien returned and told Sells that Sheffield wanted to talk to him. Gomien then walked Sells to another room where Sheffield interviewed him again. Sheffield did not re-*Mirandize* Sells before interviewing him. And Sells made additional incriminating statements. After the interview Sheffield arrested Sells.

A federal grand jury returned a two-count indictment against Sells, charging him with aggravated sexual abuse of a child, in violation of 18 U.S.C. § 2241(c), and transportation of a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a).

4                      Opinion of the Court                 21-10208

Before trial, Sells moved to suppress the incriminating state-
ments he made to law enforcement, alleging that they were ob-
tained in violation of the "Fourth Amendment" and were made in-
voluntarily, unknowingly, and unintelligently.  Specifically, Sells
argued that he requested an attorney during the April 12 interview
but was never provided one and, additionally, that his inculpatory
statements were involuntary because they were induced by prom-
ises of family counseling made by Gomien on the condition that
Sells admit to criminal activity with his daughter.  The district court
denied his motion, concluding that his confession was voluntary
and that the interviews were non-custodial, but that even if they
had been custodial—and therefore subject to *Miranda*—Sells had
knowingly and voluntarily waived his *Miranda* rights.

At trial, the district court prohibited Sells from cross-exam-
ining Gomien regarding whether Gomien's statements about the
potential for family counseling induced an involuntary confession.
The district court held that it had already determined the legal
question of inducement in denying Sells's motion to suppress and
that Sells was not entitled to re-litigate the voluntariness issue be-
fore the jury.

On appeal, Sells makes two arguments.  First, he argues that
the district court erred by denying his motion to suppress the in-
culpatory statements he made to Gomien and Sheffield.  Second,
he argues that the district court abused its discretion by limiting his
cross-examination   of   Gomien,   thereby   denying   him   the

opportunity to introduce evidence that his inculpatory statements were made involuntarily.  We address each claim in turn.[2]

## I

We start with whether the district court erred in denying Sells's suppression motion.  Sells contends that his confession was made in violation of *Miranda* and that his confession was involuntary.

*Miranda* protects a defendant's Fifth Amendment right against self-incrimination by requiring law enforcement officers to advise a person subject to custodial interrogation of certain rights and to respect the person's invocation of those rights. *United States v. Woods*, 684 F.3d 1045, 1055 (11th Cir. 2012).  But *Miranda* applies only to situations of custodial interrogation.  *Id.*  Whether an

---

[2] We review the denial of a motion to suppress as a mixed question of law and fact, with conclusions of law reviewed de novo and findings of fact reviewed for clear error. *United States v. Ross*, 964 F.3d 1034, 1039 n.2 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 1394 (2021).  We construe facts in the light most favorable to the party that prevailed in the district court.  *Id.*  The admission of statements in violation of *Miranda* is subject to harmless error review.  *United States v. Arbolaez*, 450 F.3d 1283, 1292 (11th Cir. 2006).  The question is whether there is a reasonable possibility that the complained-of evidence might have contributed to the conviction.  *Id.*  This determination requires an inquiry into the effect of the erroneously admitted statement upon (1) the other trial evidence and (2) the conduct of the defense.  *Id.* at 1293.  The voluntariness of a confession is a question of law that we review de novo.  *See United States v. Farley*, 607 F.3d 1294, 1326 (11th Cir. 2010).  An erroneous admission of a coerced confession can be harmless error.  *Arizona v. Fulminante*, 499 U.S. 279, 295 (1991).

interrogation was "custodial" is based on the totality of the circumstances, and courts look to whether an objectively reasonable person in the defendant's position would have felt a restraint on his freedom of movement to such an extent that he would not have felt free to leave. *United States v. Brown*, 441 F.3d 1330, 1347 (11th Cir. 2006). We have stated that "the actual, subjective beliefs of the defendant and the interviewing officer on whether the defendant was free to leave are irrelevant." *Id.* (quotation omitted). "Under the objective standard, the reasonable person from whose perspective 'custody' is defined is a reasonable *innocent* person." *Id.* (cleaned up).

In determining whether a person in the defendant's position would have felt free to leave, relevant factors include the location and length of the questioning; whether the officers brandished weapons, touched the defendant, or used language or a tone indicating that compliance with their orders could be compelled; statements made during the interview; the presence of physical restraints during questioning; and the interviewee's release at the end of the questioning. *Howes v. Fields*, 565 U.S. 499, 509 (2012); *United States v. Luna-Encinas*, 603 F.3d 876, 881 (11th Cir. 2010). The Supreme Court has stated that an officer's suspicions regarding a suspect "may bear upon the custody issue if they are conveyed" to the suspect. *Stansbury v. California*, 511 U.S. 318, 325 (1994). However, "[e]ven a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself,

dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest." *Id.*

Here, several of the relevant factors support the conclusion that Sells was not in custody during the May 15 interviews at the sheriff's office. Sheffield explained to Sells that he was not required to take a polygraph examination, and Sells voluntarily arrived at the sheriff's office to participate in an examination with Gomien. Sells sat in a chair next to the door and was left alone in the room with the door open for about 12 minutes before the interview began, was not restrained, was informed that he could refuse the polygraph or stop it at any time, and was allowed to leave for bathroom breaks—all of which demonstrate that there was no restraint on his freedom of movement and that his compliance could not be compelled. *See Howes*, 565 U.S. at 509; *Luna-Encinas*, 603 F.3d at 881. And Sells, in fact, left the room for a bathroom break and was left alone with the door open for about four minutes when he returned, further indicating that there was no restraint on his freedom during the pre-polygraph examination. Gomien was not wearing a gun or handcuffs, did not arrest Sells at any point during or after the pre-polygraph interview, and testified that Sells was free to leave after the interview. *Luna-Encinas*, 603 F.3d at 881. Moreover, Sells was again left alone in the room with the door partially closed for about 40 minutes between the pre-polygraph interview and the subsequent interview with Sheffield, during which time he was still unrestrained. During his interview with Sheffield, Sells remained unrestrained and moved freely about the interview

room. And Sheffield never placed Sells under arrest during the interview or gave Sells any indication that he was prohibited from leaving. Sheffield arrested Sells only after the interview.

Even if Sells was in custody, he knowingly waived his *Miranda* rights prior to making the inculpatory statements. A defendant may waive his *Miranda* rights if the waiver is made voluntarily, knowingly, and intelligently. *United States v. Bernal-Benitez*, 594 F.3d 1303, 1318 (11th Cir. 2010). The waiver must be made with full awareness of the nature of the rights being waived and the consequences of that decision. *Id.* A court may conclude that a person waived his *Miranda* rights only if the totality of the circumstances demonstrates both a free choice and the requisite level of comprehension. *Id.* Here, Gomien advised Sells of his *Miranda* rights, and Sells executed a *Miranda* waiver form *prior* to questioning about Maya's allegations. And Sells does not argue that his *Miranda* waiver prior to the pre-polygraph interview was invalid.

Sheffield's failure to reiterate the *Miranda* warnings before interviewing Sells did not render Sells's confession involuntary and unknowing. We have held that there is no requirement that a suspect be continually reminded of his *Miranda* rights once he has intelligently waived them. *Biddy v. Diamond*, 516 F.2d 118, 122 (5th Cir. 1975) (collecting cases and concluding that a re-administration of the *Miranda* warnings would have been "needlessly repetitious" where the defendant was fully warned during a prior contact with law enforcement 12 days earlier); *Ballard v. Johnson*, 821 F.2d 568, 571–72 (11th Cir. 1987) (concluding that re-administration of

*Miranda* warnings was not required where there was a same-day break in questioning during which the defendant was transported from a local police station to the county sheriff's office); *United States v. Barner*, 572 F.3d 1239, 1244–45 (11th Cir. 2009) (holding that, because the defendant had earlier been advised of his *Miranda* rights, there was no need to reiterate the *Miranda* warnings 12 days later at a subsequent interview that he initiated).

The approximately 40 minutes between the interview with Gomien and the interview with Sheffield is significantly shorter than the time periods of up to 7 or 12 days that this Court has upheld as not requiring new or reiterated *Miranda* warnings. *See Biddy*, 516 F.2d at 122; *Martin v. Wainwright*, 770 F.2d 918, 930–31 (11th Cir. 1985), *opinion modified in unrelated part on denial of reh'g*, 781 F.2d 185 (11th Cir. 1986). Based on the totality of the circumstances, the district court did not err in finding that Sells remained aware of his *Miranda* rights when he spoke with Sheffield.

Even though the interviews did not violate *Miranda*, we must determine whether Sells's confessions were voluntary. *United States v. Lall*, 607 F.3d 1277, 1285 (11th Cir. 2010). The determination of a confession's voluntariness also requires an examination of the totality of the circumstances and ultimately requires an inquiry into whether the statement was "the product of an essentially free and unconstrained choice." *Hubbard v. Haley*, 317 F.3d 1245, 1252–53 (11th Cir. 2003) (quotation marks omitted). We consider a number of factors, and the presence of one alone is not determinative. *Id.* at 1253. The relevant factors include "the

defendant's intelligence, the length of his detention, the nature of the interrogation, the use of any physical force against him, or the use of any promises or inducements by police." *Id.*

The district court correctly found that Sells's inculpatory statements were voluntary. Contrary to Sells's contention, the record, when viewed in the light most favorable to the government, does not support a conclusion that Sheffield misrepresented to him that passing a polygraph examination would prove his innocence in court. *See Lall*, 607 F.3d at 1285–86. Rather, Sheffield told Sells that a polygraph would be an easy way to convince everybody in his office that Sells was innocent. [3] Additionally, Sells was not improperly induced by Gomien's statements as to family counseling. [4] During the pre-polygraph interview, Gomien stated that

_____

[3] Even if Sheffield's statements misled Sells regarding the admissibility and helpfulness of polygraph evidence, those statements were harmless because Sells never actually took the polygraph test. Sells confessed while being interviewed by Gomien before Gomien started administering the test. And Sells made statements during his interview with Sheffield demonstrating that he knew he was confessing—not proving his innocence. For instance, Sells stated: "I was raised up never to lie . . . and I knew the truth was probably going to end up coming out . . . I'm sorry I lied to you in the first place because I was scared . . . and I didn't realize it was ever going to turn into something like this."

[4] Even if Sells was misled by Gomien's statements, misrepresentations of fact by law enforcement are generally insufficient to undermine the voluntary nature of a confession. *See Frazier v. Cupp*, 394 U.S. 731, 739 (1969). Unlike in *Lall*, where the police assured the defendant his statements wouldn't be used against him, Gomien never made any such promise. *Lall*, 607 F.3d at 1285–86.

counseling was a possibility.  But, Gomien did not make any promises to Sells during the interview, regarding family counseling or otherwise.

Moreover, Sells knew that he was being interviewed about sexually abusing his daughter, he had a GED education level, was not detained, was free to refuse cooperation or stop the interview at any time, and no physical force was used against him—all of which weigh in favor of finding his confession voluntary.  *See Hubbard*, 317 F.3d at 1252–53.

★  ★  ★

In sum, the district court did not err in denying Sells's motion to suppress.  Sells was not in custody when he made incriminating statements to police officers.  Further, even if Sells had been in custody, he knowingly waived his *Miranda* rights prior to making inculpatory statements.  Moreover, based upon the totality of the circumstances, Sells's statements were voluntary.

## II

We next address whether the district court erred in limiting Sells's cross examination of Gomien.  Normally, we review challenges to the district court's rulings on the admission of evidence for an abuse of discretion.  *United States v. Jiminez*, 224 F.3d 1243, 1249 (11th Cir. 2000).  However, when a party raises a claim of evidentiary error for the first time on appeal, we review it only for plain error.  *United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003).  Under plain-error review, we may correct an error where

(1) an error occurred; (2) it was plain; (3) it affected substantial rights; and (4) it "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotation omitted).

In *Lego v. Twomey*, the Supreme Court noted that a defendant is free "to familiarize a jury with circumstances that attend the taking of his confession, including facts bearing upon its weight and voluntariness," and that the jury may choose to "disregard confessions that are insufficiently corroborated or otherwise deemed unworthy of belief." 404 U.S. 477, 485–86 (1972). However, it established that once a district court has determined the voluntariness of a confession, it needn't allow the defendant to relitigate the issue at trial. *Id.* at 489–90.

Here, the district court did not abuse its discretion in limiting Gomien's testimony as to the voluntariness of Sells's inculpatory statements. The voluntariness of Sells's confession was a purely legal question that the district court was entitled to decide. *See Crane v. Kentucky*, 476 U.S. 683, 688 (1986). And because the district court had already ruled on the confession's voluntariness when it denied Sells's pretrial motion to suppress, Sells was not permitted to relitigate the voluntariness of his confession at trial. *See Lego*, 404 U.S. at 489–90.

In *Crane*, the Supreme Court held that evidence regarding the circumstances under which the police obtained a defendant's confession could be submitted to the jury even though the trial court had already determined that the confession was voluntary. 476 U.S. at 690. It stated that because this evidence bears on the

reliability and credibility of the confession, the jury should hear it. *Id.* at 688. Although the voluntariness of a confession is a purely legal question, the Court reasoned that "[c]onfessions, even those that have been found to be voluntary, are not conclusive of guilt." *Id.* at 689. The Supreme Court explained that

> regardless of whether the defendant marshaled the same evidence earlier in support of an unsuccessful motion to suppress, and entirely independent of any question of voluntariness, a defendant's case may stand or fall on his ability to convince the jury that the manner in which the confession was obtained casts doubt on its credibility.

*Id.*

Thus, Sells *was* permitted to present evidence to the jury as to the manner in which Gomien obtained his confession because that might have borne on its weight, credibility, and accuracy. *Lego*, 404 U.S. at 485–86; *Crane*, 476 U.S. at 689. But, in the district court, Sells objected only to the limitation of Gomien's testimony as it related to the *voluntariness* of his confession, not as it related to the *credibility* of his confession. Doc. 146 at 6–7 (Sells requested to cross examine Gomien to "address the voluntariness of [Sells's] confession with the jury"). And the offer of proof that Sells made while questioning Gomien outside of the jury's presence went only to the voluntariness of his confession, not its credibility. Plain-error review applies because Sells did not object to the exclusion of evidence bearing on the weight and accuracy of his confession that

would cast doubt on its credibility. *See Jernigan*, 341 F.3d at 1280. The district court's decision wasn't plain error.

Moreover, in light of Maya's trial testimony and the other evidence admitted by the government at trial—including a video recording of the interviews—the proffered testimony was "unimportant in relation to everything else the jury considered" and therefore harmless. *United States v. Pon*, 963 F.3d 1207, 1227 (11th Cir. 2020); *see also United States v. Roy*, 855 F.3d 1133, 1178 (11th Cir. 2017) (en banc). Evidence of overwhelming guilt cuts against a finding that an error was constitutionally harmful. *Pon*, 963 F.3d at 1227. Even though the district court did not permit Sells to cross-examine Gomien about inducing Sells's confession, the jury had the opportunity to listen to interactions between Sells and Gomien and observe their demeanors during the pre-polygraph interview when weighing the credibility of Sells's confession. Any error by the district court in limiting Gomien's testimony regarding Sells's confession was harmless beyond a reasonable doubt.

★  ★  ★

The district court did not abuse its discretion in denying Sells's suppression motion. Nor did it commit plain error in refusing to allow Sells to cross-examine Gomien regarding Sells's confession.

**AFFIRMED.**