[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13963

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

SHADON DEMETRIC EDWARDS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:19-cr-60373-AHS-1

_____

Before ROSENBAUM, NEWSOM, and MARCUS, Circuit Judges.

NEWSOM, Circuit Judge:

Shadon Edwards pleaded guilty to possessing a firearm and ammunition despite having previously been convicted of a crime punishable by more than a year in prison, in violation of 18 U.S.C. § 922(g).  On appeal, Edwards challenges his § 922(g) conviction and 180-month sentence on three grounds.  First, he contends that his guilty plea wasn't knowing and voluntary because the district court failed to inform him that, by pleading, he would waive his right to appeal the denial of an earlier suppression motion.  Second, he asserts that the district court wrongly enhanced his sentence under the Armed Career Criminal Act because the government didn't prove beyond a reasonable doubt, as required by *Erlinger v. United States*, 602 U.S. 821 (2024), that he had earlier been convicted of three crimes that occurred on different occasions.  Third, he argues that § 922(g) exceeds Congress's Commerce Clause authority.

After careful review, and with the benefit of oral argument, we affirm the district court's judgment.

**I**

**A**

Shadon Edwards was suspected of being a high-level organizer in a drug-trafficking organization responsible for distributing illegal narcotics throughout south Florida.  After obtaining an arrest warrant for Edwards, law-enforcement officials observed him driving around Pompano Beach.  The officers followed and, after

seeing Edwards park, approached and took him into custody. A search incident to Edwards's arrest revealed that he had a Glock 43 nine-millimeter semi-automatic pistol, loaded with six rounds of ammunition.

**B**

A grand jury indicted Edwards on a single count: the knowing possession of a firearm and ammunition by one who had previously been convicted of a crime punishable by more than a year in prison, in violation of 18 U.S.C. § 922(g)(1).[1] Edwards filed a motion to suppress the gun and ammunition found in his car, which the district court denied. He then pleaded guilty pursuant to a written plea agreement that neither expressly preserved nor expressly waived his right to appeal. In connection with his plea, Edwards also signed a factual proffer describing his offense conduct and some of his prior criminal history, including, as particularly relevant here, convictions "for trafficking in oxycodone (10-022573CF10A), aggravated battery with a deadly weapon (10-022679CF10A), and robbery with a deadly weapon/aggravated battery (97-000465CF10B)." Factual Proffer ¶ 2, Dkt. No. 81.

At the change-of-plea hearing, the district judge engaged in a colloquy with Edwards to assess several matters, including whether he was competent to plead guilty and whether he understood the consequences of doing so. At the hearing, there was no

---

[1] The indictment also mentioned the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), albeit without further elaboration.

discussion—one way or the other—about whether, by pleading, Edwards would forfeit his right to appeal the earlier denial of his suppression motion.  Edwards pleaded guilty, and the judge found that his plea was "entered into freely and voluntarily with a knowing, intelligent waiver of [his] rights."  Tr. of Change of Plea at 18:20–22, Dkt. No. 105.

In computing Edwards's offense level for sentencing purposes, the presentence investigation report applied an enhancement pursuant to U.S.S.G. § 4B1.4(a), which states that "[a] defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal."  Section 924(e), the Armed Career Criminal Act, in turn prescribes a mandatory minimum 15-year sentence for anyone who violates § 922(g) and "has three previous convictions" for "violent felon[ies] or . . . serious drug offense[s], or both, committed on occasions different from one another."   18 U.S.C. § 924(e).  In particular, Edwards's PSI listed the same three predicate convictions as had his factual proffer:

> The defendant is an armed career criminal because he is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e), pursuant to § 4B1.4(a). The defendant has the prior felony convictions as noted in docket numbers 10-022573CF110A [*i.e.*, for trafficking in oxycodone], 10-022679CF10A [*i.e.*, for aggravated battery with a deadly weapon], and 97-000465CF10B [*i.e.*, for robbery with a deadly weapon/aggravated battery].

PSI ¶ 20. With the ACCA enhancement, Edwards's statutory minimum term of imprisonment was 15 years, so the PSI increased the low end of Edwards's range from 168 months to 180 months in prison. Edwards didn't object to the PSI's recommended sentence.[2]

At the sentencing hearing, the district judge noted that the PSI's recommended sentence reflected an ACCA-enhanced 15-year mandatory minimum, and Edwards agreed to it. The judge therefore imposed a sentence of 180 months in prison, followed by a two-year term of supervised release. Again, Edwards didn't object.

During the sentencing hearing, Edwards's lawyer asked the judge to appoint separate counsel to appeal the earlier denial of the motion to suppress the handgun evidence. Seemingly in an effort to recall the nature of Edwards's plea, which Edwards had entered several months earlier, the judge asked the lawyers whether there was a formal agreement. After Edwards's counsel explained that he didn't "remember there being an appellate waiver," the judge suggested that because "the plea agreement . . . does not mention an appellate waiver," Edwards had "the right . . . to take an appeal"

---

[2] Edwards made two factual objections to the PSI—both are unrelated to this appeal. *See* Tr. of Sentencing Hr'g at 3:20–25, Dkt. No. 106 ("[Defense Counsel]: There were two very minor—they're not even—they don't even affect his guidelines—two minor objections, I would say, to the PSI, and they're minor in and of itself. That's about it. Other than that, we're just asking for the Court to sentence him to 15 years and we all go about our business.").

of the suppression ruling.  Tr. of Sentencing Hr'g at 24:18–22, Dkt. No. 106.

Edwards subsequently filed a notice of appeal indicating his intent to seek review of the denial of the suppression motion.  The district court granted Edwards's lawyer's motion to withdraw and assigned new counsel, who filed an amended notice of appeal.

## II

Before us, Edwards challenges his conviction and 180-month sentence on three grounds:  He argues (1) that his guilty plea wasn't knowing and voluntary because he didn't realize that by pleading he would waive his right to appeal the district court's denial of his suppression motion; (2) that the district court erred in enhancing his sentence under ACCA because the government didn't prove, as required by *Erlinger v. United States*, 602 U.S. 821 (2024), that his predicate offenses occurred on different occasions; and (3) that § 922(g)(1) exceeds Congress's Commerce Clause power.  We will address each issue in turn.

## A

First up, the voluntariness of Edwards's plea.  When, as here, a defendant fails to object during his plea colloquy, we review the district court's determination that his plea was knowing and voluntary only for plain error.  *See United States v. Monroe*, 353 F.3d 1346, 1349 (11th Cir. 2003) (citing *United States v. Vonn*, 535 U.S. 55, 59 (2002)).  "To establish plain error, a defendant must show that (1) there was an error, (2) the error was plain, and (3) the error affects substantial rights."  *United States v. Roosevelt Coats*, 8 F.4th 1228, 1235

(11th Cir. 2021).  An error about the voluntariness of a plea affects a defendant's "substantial rights" if he shows a reasonable probability that the error influenced his "'decision to plead.'"  *United States v. Steiger*, 99 F.4th 1316, 1326 (11th Cir. 2024) (en banc) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 84 (2004)).  If the defendant makes the first three showings, we have the "discretion to recognize an unpreserved error but only if (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings."  *Roosevelt Coats*, 8 F.4th at 1235 (citation modified).

Before a district judge accepts a guilty plea, he must "address the defendant personally in open court and determine that the plea is voluntary."  Fed. R. Crim. P. 11(b)(2).  In particular, the judge must ensure that the defendant understands certain facts, including "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence."  *Id.* 11(b)(1)(N); *see also, e.g.*, *United States v. Lejarde-Rada*, 319 F.3d 1288, 1289 (11th Cir. 2003) (noting that the Rule 11 colloquy aims to ensure, among other things, that the defendant "know[s] and understand[s] the consequences of his guilty plea") (citation modified).

Importantly for present purposes, a knowing and voluntary guilty plea "waives all non-jurisdictional defects," *United States v. Pierre*, 120 F.3d 1153, 1155 (11th Cir. 1997) (citation modified), including, as relevant here, the allegedly erroneous denial of a motion to suppress evidence.  Accordingly, a "defendant who wishes to preserve appellate review of a non-jurisdictional defect while at the same time pleading guilty can do so only by entering a

'conditional plea' in accordance with Fed. R. Crim. P. 11(a)(2)." *Id*. All here agree that Edwards's plea was "unconditional." Br. of Appellant at 31.

Edwards insists, though, that his guilty plea wasn't knowing and voluntary because he didn't understand one of the consequences of pleading—namely, that he would lose the right to appeal the denial of his motion to suppress the handgun evidence. He asserts that the district court failed to inform him of that fact during the Rule 11 colloquy and, indeed, even suggested at his later sentencing hearing that he *could* pursue the appeal. Edwards relies principally on our decision in *Pierre* to argue that because he believed that his plea agreement preserved the right to appeal the denial of the suppression motion—but in fact didn't—his plea wasn't knowing and voluntary.

In *Pierre*, we considered the appeal of a defendant who, having pleaded guilty, sought to argue that his speedy-trial rights had been violated. 120 F.3d at 1154. We vacated the conviction upon determining that, at the time he pleaded guilty, the defendant didn't understand the consequences of doing so: "Because Pierre entered—and the district court accepted—this guilty plea only on the reasonable (but mistaken) belief that [he] had preserved the speedy trial issues for appeal, his plea was, as a matter of law, not knowing and voluntary." *Id*. at 1156. We based our decision on a review of "[t]he plea colloquy," which "unequivocally indicate[d] that Pierre intended to plead guilty on the condition" that he retained his appellate rights. *Id*. at 1155. For example, we cited statements at the

plea hearing demonstrating that Pierre had pleaded guilty "only after having been assured by the district court judge that [] he had preserved the speedy trial issues for appeal." *Id.* In particular, the district judge had said: "So I'm going to deny your renewed motion to dismiss. Now, if you're ready to go to trial, we have a jury coming up. If you feel that you wish to plead guilty and preserve these legal issues, you may do so." *Id.* We also cited statements demonstrating that "Pierre's counsel [had] explicitly tried to preserve the speedy trial issue." *Id.* Specifically, Pierre's counsel had stated: "As long as my client is assured by the court, which you have done, that these issues are protected for purposes of appeal, [Pierre] may be willing to wish to do that in the future. But for the purposes of trial, he is entering a plea. It is in his best interest at this time." *Id.*

Here, Edwards hasn't pointed to any similar evidence from the plea hearing—no statement by him, his lawyer, or the district judge—indicating that he didn't understand the consequences of pleading guilty. To be sure, Edwards now says that once he lost the suppression issue, he wanted to plead and "go onto the sentencing part" so that he could appeal the denial of the motion. *See* Br. of Appellant at 29–30 (quoting Tr. of Change of Plea at 10:4–12). But at the plea hearing, the suppression issue was mentioned only once, in passing. The district judge asked Edwards's counsel how he "got ready for today's hearing." Tr. of Change of Plea at 8:5–6. Edwards's lawyer responded: "[I]n anticipation of today's hearing, [my client] and I had a scheduled visit last week where we went over the entire plea agreement and . . . the entire factual proffer

together." *Id*. at 8:18–21. Edwards's lawyer then added the following regarding the suppression motion—its only mention:

> [Defense Counsel]: As the Court noted earlier, we also had a motion to suppress in this case. The facts are rather simple. I mean, he was pulled over and he was arrested and he was in possession of a firearm and he was a convicted felon. It's not a—this is not factually difficult. It was just whether or not they had requisite legal rights to effectuate that stop. That was the whole issue. And this Court, unfortunately, ruled against us, but that's the nature of the case.

*Id*. at 8:22–9:4.

No one suggested at that time that Edwards wanted to—or thought he could—appeal the denial of the suppression motion. And Edwards's counsel certainly didn't tie the entry of his plea to the preservation of the right to appeal, as the lawyer had in *Pierre*. To the contrary, Edwards's lawyer seemed resigned to the district court's ruling.

The preservation issue didn't resurface for another three months, at the sentencing hearing. Edwards asserts before us that a colloquy at that hearing shows that he intended all along to appeal the denial of the motion to suppress. Br. of Appellant at 30–31. We disagree.

> Here's the relevant sentencing-hearing exchange, in full:
>
> Defense Counsel: He did tell me, Judge, he wants me to try to get counsel appointed to just appeal the

ruling on the motion to suppress.  So I told him that I would file the notice.  And if the Court at some point needs to have a hearing as to whether he is in forma pauperis and is entitled to counsel for that appeal, I guess we'll have a hearing.  But that's what he requested of me.

The Court:  Sure.  On this case did we have a formal plea agreement?  I can't remember now.

Defense Counsel:  I don't remember – –

Government:  No, I think he pled open, Your Honor.

Defense Counsel:  Yeah.  Yeah, I don't remember there being an appellate waiver.  I don't recall.

The Court:  Right.  I just wanted to advise him if there was.  So the plea agreement at docket entry 80 does not mention an appellate waiver.  Certainly, sir, you do have the right, if you want, to take an appeal of that.  Just don't miss your timelines on that.  Okay?

Mr. Edwards:  All right.  Thank you, sir.

Tr. of Sentencing Hr'g at 24:7–25:1.

Unsurprisingly, Edwards focuses on the district court's statement that he "ha[d] the right, if [he] want[ed], to take an appeal" from the order denying the suppression motion.  *Id.* at 24:23–24. But that remark is both too little and too late.  As for the too-little part, the context makes clear that in the months that had passed since the plea hearing, everyone (including the district judge) had

lost track of the details of Edwards's plea—whether it was a formal plea agreement, whether it contained an appeal waiver, etc. At the sentencing hearing, the judge assumed that because the agreement didn't contain an appeal waiver, Edwards could appeal the suppression order. But the judge hardly made any guarantees.

And as for the too-late: All of the evidence to which Edwards now points comes from the sentencing hearing, which, again, took place some three months after he pleaded guilty. That makes this case quite different from *Pierre*, in which the defendant could—and did—point to strong indications from the plea hearing itself that he misunderstood, at the time, what appellate rights he was waiving. There is simply no basis in the record here for imputing backwards, as it were, whatever was said at sentencing to show genuine confusion at the earlier plea hearing.[3]

Edwards has failed to show that the district court plainly erred in accepting his plea as knowing and voluntary.[4] We therefore affirm the district court's judgment in that respect.

---

[3] Edwards separately complains that the district judge failed to explicitly warn him that he couldn't appeal the denial of his motion to suppress. But nothing in Rule 11 or our caselaw requires a judge to proactively inform a defendant that by entering an unconditional plea he waives his right to appeal all non-jurisdictional matters. Edwards ultimately concedes as much, saying only that one circuit court has called this the "preferred practice." Reply Br. at 3–4 (citing *United States v. Lampazianie*, 251 F.3d 519, 526 (5th Cir. 2001)). Perhaps, but that is no basis for finding plain error.

[4] Unrelatedly, Edwards argues that his plea wasn't knowingly and voluntarily entered "on the basis of *Erlinger* as well." Letter Br. of Appellant at 5 n.4, Dkt. No. 37. In a footnote in a supplemental brief, Edwards asserts that had he

## B

### 1

We next consider the Armed Career Criminal Act enhancement. Because Edwards never objected to the enhancement, we review only for plain error. *See United States v. Jones*, 743 F.3d 826, 828 (11th Cir. 2014); Fed. R. Crim. P. 52(b). While a conviction under § 922(g) ordinarily yields a maximum sentence of 10 years in prison, 18 U.S.C. § 924(a)(2), ACCA mandates a *minimum* 15-year sentence for an offender who has three prior convictions for "violent felon[ies]" or "serious drug offense[s]" that were "committed on occasions different from one another," *id*. § 924(e)(1). Edwards contends that the district court erred in enhancing his sentence under ACCA because the government failed to prove beyond a reasonable doubt that his three predicate convictions occurred on different occasions.

In *Wooden v. United States*, the Supreme Court explained that ACCA "contains *both* a three-offense requirement *and* a three-occasion requirement." 595 U.S. 360, 368 (2022). Although ACCA

---

"known that he was entitled to a jury determination as to whether his offenses were committed on different occasions, he may not have pled guilty—or he may have pled guilty to the 18 U.S.C. § 922(g)(1) charge, and sought a trial on the occasions issue." *Id*. We'll address the merits of Edwards's *Erlinger* argument in the next Part, but we decline to consider it vis-à-vis the voluntariness of his plea. "We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–81 (11th Cir. 2014).

initially focused only on the number of offenses, Congress later amended it to specify that qualifying offenses must also occur on different occasions. *See* Anti-Drug Abuse Act of 1988, Pub. L. 100–690, § 7056 (codified as amended at 18 U.S.C. § 924(e)(1)) (inserting "committed on occasions different from one another," after "or both"). Congress "added the occasions clause only after a court applied ACCA to an offender . . . convicted of multiple counts of robbery arising from a single criminal episode." *Wooden*, 595 U.S. at 371–73 (citing *Petty v. United States*, 481 U.S. 1034, 1034–1035 (1987)). The *Wooden* Court emphasized that while each ACCA-qualifying offense often occurs separately, "multiple crimes may occur on one occasion even if not at the same moment." *Id.* at 366. "[T]reating each temporally distinct offense as its own occasion" as a per se matter, the Court explained, would improperly "collaps[e] two separate statutory conditions." *Id.* at 368.

To operationalize the different-occasions requirement, the *Wooden* Court described a "range of circumstances [that] may be relevant to identifying episodes of criminal activity"—*e.g.*, the offenses' timing, location, and character. *Id.* at 369. Applying those considerations—which we'll explore in detail soon enough—the Court concluded that Wooden's ten burglaries didn't occur on different occasions because (1) he committed them "in a single uninterrupted course of conduct," (2) he committed them at "one location," and (3) the offenses were "essentially identical" and "intertwined." *Id.* at 370.

Approximately four months after *Wooden* was decided, Edwards entered his unconditional guilty plea in this case. His written plea agreement recites that "[t]he defendant . . . understands and acknowledges that the Court must impose a statutory mandatory minimum term of imprisonment of fifteen (15) years." Plea Agreement ¶ 3, Dkt. No. 80. The agreement was accompanied by a signed factual proffer, which recited that "[t]he defendant has at least seven (7) felony convictions" and specifically enumerated three of them—"for trafficking in oxycodone (10-022573CF10A), aggravated battery with a deadly weapon (10-022679CF10A), and robbery with a deadly weapon/aggravated battery (97-000465CF10B)." Factual Proffer ¶ 2. The same three convictions were cited in Edwards's presentence investigation report as grounds for enhancing his sentence under ACCA. *See* PSI ¶ 20 ("The defendant is an armed career criminal because he is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e), pursuant to § 4B1.4(a). The defendant has the prior felony convictions as noted in docket numbers 10-022573CF110A, 10-022679CF10A, and 97-000465CF10B."). And the district court in fact used those three convictions to enhance Edwards's sentence. The judge explained that "looking at the offense level computation" in the PSI, the "Armed Career Criminal enhancement gets [the offense level] up to 33." Tr. of Sentencing Hr'g at 4:19–23 (citing PSI ¶ 20).

Edwards didn't object to the ACCA enhancement on any ground, including that the offenses underlying the ACCA predicates weren't committed on different occasions. He didn't object

to the PSI's ACCA-enhanced recommended sentence, *see supra* at 5 n.2, nor did he object to the enhancement during the sentencing hearing. To the contrary, Edwards's counsel suggested at the sentencing hearing that the ACCA-enhanced 15-year sentence was appropriate:

> [Defense Counsel]: My client has been aware for months that he's facing a statutory minimum sentence of 15 years, which is 180 months in federal prison. He's been aware of it. He has not gone to trial on this particular case. He has not testified in this particular case. He got acceptance of responsibility, even though it doesn't really affect him. So he's just asking the Court to accept both parties' recommendations, sentence him to 15 years, and he'll move on with his life.

Tr. of Sentencing Hr'g at 16:5–13; *see also id.* at 21:14–17 ("Court: [N]ow that sentence has been imposed, do either of you object to the Court's finding of fact or the manner in which the sentence was pronounced? [Defense Counsel]: No, Judge."). Hearing no objection to the applicability of the ACCA enhancement based on Edwards's three prior convictions, the district court sentenced him to the 15-year statutory minimum.

Then came *Erlinger*, in which the Supreme Court held that because the determination that a defendant's prior crimes were committed on different occasions "'increase[s] the prescribed range of penalties to which a criminal defendant is exposed,'" it "must be resolved by a unanimous jury beyond a reasonable doubt (or freely

admitted in a guilty plea)." 602 U.S. at 834 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).[5] In light of *Erlinger*, Edwards contends on appeal that because a jury didn't find beyond a reasonable doubt that his three ACCA predicate offenses were committed on different occasions, the district court committed plain error when it imposed an enhanced 15-year minimum-mandatory sentence.

**2**

The government concedes that in light of *Erlinger*, Edwards has satisfied the first two prongs of the plain-error standard—an "error" that is "plain"—because, it says, the different-occasions requirement was neither proven to a jury beyond a reasonable doubt nor expressly admitted by Edwards in his plea. *See* Br. of Appellee at 28.[6]

---

[5] To be clear, *Erlinger* didn't add a different-occasions element to the statute. As already explained, Congress codified the different-occasions requirement some 35 years ago. And almost four months before Edwards entered his plea, and eight months before his sentencing hearing, the Supreme Court in *Wooden* reiterated the significance of the different-occasions element and clarified the circumstances under which offenses will (and won't) satisfy it. *Erlinger*, rather, resolved the "who decides" question—namely, by holding that the different-occasions issue must be resolved either by a jury beyond a reasonable doubt or by the defendant himself in a guilty plea. *See* 602 U.S. at 834. District courts, the *Erlinger* Court held, "may not assume the jury's factfinding function for themselves" to conclude that offenses occurred on different occasions. *Id.*

[6] The second half of that disjunction isn't self-evidently correct. Here, Edwards at least arguably admitted in his plea that his three convictions satisfied ACCA's different-occasions requirement. As already explained, Edwards admitted that the three convictions enumerated in both the factual proffer and the PSI qualified him for the ACCA enhancement. And by pleading to the

Still, to prevail on plain error, Edwards must show, at step three, that the *Erlinger* error affected his "substantial rights." "[U]nlike harmless error—where the government carries the burden—the onus of establishing prejudice under plain error rests with the defendant." *United States v. Margarita Garcia*, 906 F.3d 1255, 1267 (11th Cir. 2018). That burden is "heavy"—and, in particular, "the burden of showing prejudice to meet the third-prong requirement is anything but easy." *Id.* (citation modified).

To demonstrate prejudice, a defendant must "show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *United States v. Corbett*, 921 F.3d 1032, 1037 (11th Cir. 2019) (quoting *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016)). "[W]e define the 'outcome' that must have been affected by considering the nature of the rule violated by the district court and the role that rule plays in the judicial process." *Steiger*, 99 F.4th at 1326. When, as here, "the proceeding is sentencing, we ask whether the sentence would be different but for erroneous sentencing enhancements or an inaccurate sentencing guidelines range." *Id.* (citation modified). Edwards thus "has the difficult burden of showing there is a 'reasonable probability' that he would have received a lighter sentence but for the error." *Jones*,

---

whole—*i.e.*, ACCA applicability, writ large, based on those three convictions—one could argue that he implicitly pleaded to the constituent parts, including the applicability of the different-occasions requirement. But the government hasn't pressed that argument, so we won't pursue it.

22-13963                Opinion of the Court                19

743 F.3d at 830.[7]  In other words, a showing that Edwards would have been entitled to a jury determination on the separate-occasions inquiry is not, in and of itself, enough to establish that the error affected his "substantial rights" under the plain-error framework.  Rather, to prevail, Edwards must further show a reasonable probability that a jury would have concluded that he committed the three predicate crimes on fewer than three occasions.

As already explained, the district court enhanced Edwards's sentence under ACCA on the basis of three prior convictions: (1) for a December 20, 1996, robbery with a deadly weapon and

_____

[7] Both parties seem to misunderstand—albeit in different ways—how the substantial-rights prong operates in this case.  For the first time at oral argument, Edwards asserted that under *Greer v. United* States, 593 U.S. 508 (2021), he can show prejudice if there is a reasonable probability that had he known about the *Erlinger* rule, he wouldn't have pleaded guilty and would have instead insisted on going to trial.  *See* Oral Arg. at 7:46, 28:22.  That is incorrect.  True, when a defendant challenges the voluntariness of his plea, the reasonable-probability standard is appropriately focused on whether he would have pleaded guilty.  *Greer*, 593 U.S. at 508.  Accordingly, that formulation would have governed Edwards's voluntariness challenge had we found the first two prongs of the plain-error standard satisfied.  *See supra* at 7.  But it doesn't govern his challenge to the applicability of the ACCA enhancement.

For its part, the government contends that the requisite reasonable probability doesn't exist here because Edwards hasn't shown either "that the three qualifying offenses were not committed on different occasions" or that "the government would have been unable to prove that fact had he made a timely objection."  Br. of Appellee at 31.  But that formulation erects too high a bar.  To be sure, a defendant *may* seek to demonstrate prejudice in those ways—and they would likely be persuasive—but he isn't *required* to do so in order to show an effect on his substantial rights.

aggravated battery, for which the arrest occurred on April 1, 1997; (2) for an undated instance of drug trafficking, for which the arrest occurred on December 28, 2010; and (3) for an October 1, 2010, aggravated battery with a deadly weapon, for which the arrest occurred on December 30, 2010.  Edwards concedes that it is fair to assume that the 1996 robbery was committed on a different occasion than the other two—the nearly 14-year gap is hard to ignore. But, he maintains, the government didn't prove that the drug-trafficking and aggravated-battery offenses, both with arrest dates in 2010, were committed on different occasions.

The PSI contains no details about the drug-trafficking offense other than the arrest date.  Although "[t]he circumstances of this arrest were requested from the Broward County Clerk of Court," no report was ever produced.  Letter Br. of Appellant at 7, Dkt. No. 37 (citing PSI ¶ 34).  Edwards contends that, "based on the lack of facts in the record concerning the 2010 drug offense," a jury likely would have found that the drug-trafficking and aggravated-battery offenses were committed on the same occasion and, therefore, that he wasn't subject to the ACCA enhancement.[8]  *Id.* at 8. We cannot agree.

---

[8] Edwards's other arguments improperly employ a harmless-error-like standard, pursuant to which the government bears the burden.  *See* Letter Br. of Appellant at 5 ("[B]ecause the government did not prove that his offenses occurred on three separate occasions," "Edwards is entitled to be resentenced without the ACCA enhancement."); *see also id.* at 6 ("[T]he 'facts' in the record here—even the 'unobjected to' facts in the PSI—are insufficient for a jury to

In our review for plain error, we consider "the whole record" to determine "the effect of any error on [the defendant's] substantial rights," including "proceedings that both precede and postdate the errors about which [the defendant] complains." *United States v. Reed*, 941 F.3d 1018, 1021 (11th Cir. 2019) (citation modified); *see also Greer v. United States*, 593 U.S. 503, 511 (2021) (explaining that "an appellate court conducting plain-error review may consider the *entire* record—not just the record from the *particular proceeding* where the error occurred"). So we will examine the entire record for evidence bearing on what the *Wooden* Court called the "range of circumstances" that "may be relevant to identifying episodes of criminal activity." *Wooden*, 595 U.S. at 369; *see also Erlinger*, 602 U.S. at 828 (noting the "intensely factual nature of this inquiry"). The Court hoped that, "[f]or the most part," applying the different-occasions requirement would be "straightforward and intuitive." *Wooden*, 595 U.S. at 369. But for the tough cases, the Court offered guidance to help determine whether offenses constitute single or multiple episodes of criminal activity. In particular, the Court emphasized considerations such as "[1] whether the defendant's past offenses were 'committed close in time,' [2] whether they were committed near to or far from one another, and [3] whether the offenses were 'similar or intertwined' in purpose and character." *Erlinger*, 602 U.S. at 828 (quoting *Wooden*, 595 U.S. at 369).

---

conclude beyond a reasonable doubt that the offenses occurred on different occasions.").

22                    Opinion of the Court                    22-13963

Candidly, the record doesn't shed much light on the first two *Wooden* factors. With respect to timing, while the PSI establishes that the aggravated-battery offense occurred on October 1, 2010, it doesn't specify the date of the drug-trafficking offense. Accordingly, we can't make any firm judgments about whether those two crimes were "committed close in time, in an uninterrupted course of conduct" or if they were "separated by substantial gaps in time or significant intervening events." *Wooden*, 595 U.S. at 369. The record likewise reveals nothing about the "[p]roximity of location" that would permit an assessment of whether the two crimes occurred far from one another, which would of course make it "less likely they are components of the same criminal event." *Id*.

That leaves the offenses' "purpose and character"—and there, we have more to go on. Edwards's drug-related offense involved trafficking in oxycodone, possession of cocaine with intent to deliver or sell, and possession of drug paraphernalia. By contrast, his aggravated-battery arose out of domestic dispute with a former romantic partner. According to the arrest affidavit—

> [O]n October 1, 2010, the defendant picked up a small flowerpot, forcefully grabbed the victim by her hair, and then smashed the pot against the victim's head. The victim sustained a laceration to the left side of her head. The victim and the defendant had been involved in a romantic relationship for two years and lived together for seven months. The victim was transported to the hospital where she received multiple staples on her head. The defendant was later arrested on December 30, 2010.

PSI ¶ 35. At least on the face of things, Edwards's drug-trafficking and aggravated battery offenses seem to have nothing in common—to be totally unrelated. And there's certainly nothing in the record to suggest that the two crimes "share a common scheme or purpose," such that they are likely to "compose one occasion." *Wooden*, 595 U.S. at 369. Accordingly, we think the third, "purpose and character" factor significantly diminishes the probability that the drug-trafficking and aggravated-battery offenses occurred on the same occasion.

Other facts likewise indicate, on balance, that those crimes occurred on different occasions. First, Edwards was arrested for the offenses two days apart—for the drug-trafficking crime on December 28, 2010, and for the aggravated-battery crime on December 30, 2010. Second, the criminal cases bear non-consecutive docket numbers—indicating, at the very least, that the charges were filed on different dates. And third, the two crimes were adjudicated almost three years apart—the aggravated battery on July 21, 2011, and the drug trafficking on April 29, 2014. We think it at least relevant—and certainly not irrelevant—that the two offenses were never combined into a single arrest or case, despite ample opportunities to do so.

We also note the conspicuous absence of any evidence to the contrary. Even on appeal, and with an opportunity to supplement the record, Edwards hasn't presented any evidence that would demonstrate, or even strongly suggest, that the drug-trafficking and aggravated-battery offenses were committed on the

same occasion.  He doesn't assert, for instance, that the two crimes took place on the same date, were committed in the same location, or involved the same victims.  Rather, Edwards simply says that there isn't sufficient evidence in the record for the government to prove beyond a reasonable doubt that the ACCA enhancement applies.  But on plain-error review, where the burden rests with Edwards, and with the balance of the record evidence against him, that's not enough.

To be sure, Edwards isn't required to show by a preponderance of the evidence that, but for the *Erlinger* error, the result would have been different.  *See Dominguez Benitez*, 542 U.S. at 83 n.9 ("The reasonable-probability standard is not the same as, and should not be confused with, a requirement that a defendant prove by a preponderance of the evidence that but for error things would have been different.").  And we acknowledge Edwards's argument that the lack of smoking-gun evidence about the locations and dates of the crimes makes it *possible* that a jury could have found the different-occasions requirement not satisfied.  But a mere possibility isn't a reasonable probability.  *See United States v. Marcus*, 560 U.S. 258, 263 (2010) (deeming a standard pegged to "any possibility, *no matter how unlikely*," of a different outcome "irreconcilable with our 'plain error' precedent") (citation modified).  And again, the record evidence that we do have—the drug-trafficking and aggravated-battery offenses' divergent "purpose[s] and character[s]," the different arrest and adjudication dates, the non-consecutive docket numbers, etc.—indicates that they were indeed "committed on occasions different from one another."  18 U.S.C. § 924(e)(1).

Finally, we note that Edwards's hasn't explained how there *could* be a "reasonable probability"—more than a mere possibility—of a different outcome here. As we've observed, *see supra* at 24, Edwards hasn't put forward any theory that pushes this case over the reasonable-probability hurdle. Far from showing a reasonable probability, Edwards hasn't even speculated to how the *Erlinger* error might have affected the outcome. For example, he hasn't argued that the aggravated-battery offense occurred in the course of a dispute over the drug trafficking, such that a jury could have found that those two offenses occurred on the same occasion. And "[w]here the effect of an alleged error is so uncertain, a defendant cannot meet his burden of showing that the error actually affected his substantial rights." *Jones v. United States*, 527 U.S. 373, 394–95 (1999).

We therefore hold that Edwards hasn't met his plain-error burden to show that his "substantial rights" were affected, and we affirm the district court's decision to apply the ACCA enhancement.

## C

Finally, we address Edwards's argument that Congress exceeded its Commerce Clause authority when it enacted 18 U.S.C. § 922(g).[9]

---

[9] We review a district court's determination regarding the constitutionality of a statute for plain error when, as here, the issue wasn't presented below. *See United States v. Valois*, 915 F.3d 717, 729 n.7 (11th Cir. 2019).

We have repeatedly held that § 922(g) is facially constitutional under the Commerce Clause because it contains an express jurisdictional requirement. *See, e.g.*, *United States v. Stancil*, 4 F.4th 1193, 1200 (11th Cir. 2021); *United States v. Jordan*, 635 F.3d 1181, 1189 (11th Cir. 2011); *United States v. Scott*, 263 F.3d 1270, 1273–74 (11th Cir. 2001) ("[T]he jurisdictional element of the statute, *i.e.*, the requirement that the felon 'possess in or affecting commerce, any firearm or ammunition,' immunizes § 922(g)(1) from [a] facial constitutional attack."); *United States v. Dupree*, 258 F.3d 1258, 1259–60 (11th Cir. 2001); *United States v. McAllister*, 77 F.3d 387, 390 (11th Cir. 1996).

We have also rejected as-applied challenges to § 922(g), holding that the government demonstrates the required "minimal nexus" to interstate commerce when it proves that the firearms were manufactured outside the state where the offense took place and, thus, necessarily traveled in interstate commerce. *See, e.g.*, *Jordan*, 635 F.3d at 1189 (holding that § 922(g) is constitutional as applied to "a defendant who possessed a firearm only intrastate" because the firearm had moved in interstate commerce); *see also* *United States v. Wright*, 607 F.3d 708, 715–16 (11th Cir. 2010). Here, Edwards admitted in his factual proffer that the firearm and ammunition that he possessed in Florida were manufactured out of state and had therefore moved in interstate commerce prior to his possession of them. The government thus satisfied the minimal-nexus requirement here.

Under the prior-panel-precedent rule, we're obliged to follow our existing decisions unless overruled by this Court en banc or abrogated by the Supreme Court.  *United States v. White*, 837 F.3d 1225, 1228 (11th Cir. 2016).  Because neither has occurred here, we affirm the judgment of the district court that § 922(g) doesn't violate the Commerce Clause.

### III

For the foregoing reasons, we **AFFIRM** the district court's judgment.

**AFFIRMED.**