**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 25-11533

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

AUNYIS CHERRY,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:24-cr-00423-JSM-AAS-1

————————————

Before JORDAN, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Aunyis Cherry appeals the denial of his motion for a judgment of acquittal, following a jury trial in which he was found guilty of escape from federal custody. After review, we affirm.

## I

In 2022, Mr. Cherry was sentenced to serve 275 months in prison for conviction of a federal offense.  In March of 2024, while he was serving that sentence in a federal correctional facility in Williamsburg, South Carolina, Mr. Cherry was transferred to Pinellas County Jail in Clearwater, Florida, to face a pending state charge. Before he left the federal facility, Mr. Cherry signed a release form indicating, among other things, that he was "to be returned" to the federal facility in Williamsburg and that he would contact a designated staff member if state officials released him.

Months later, Mr. Cherry's state charges were dismissed. Rather than returning Mr. Cherry to the federal facility, though, state officials erroneously told him he was due to be released. When Mr. Cherry asked them if they were sure, they reassured him.  Mr. Cherry eventually left, and he did not return to or contact the designated staff member at the federal facility at FCI Williamsburg.  Shortly thereafter, the state officials realized their mistake. Weeks later, the United States Marshals found Mr. Cherry in an apartment in Tampa, Florida, and apprehended him there.

The government charged Mr. Cherry with one count of escape under 18 U.S.C. § 751(a), alleging that he knowingly escaped from federal custody.  The case proceeded to trial, and the evidence at trial provided the following relevant details—which we have just preliminarily summarized—regarding Mr. Cherry's transfer by federal officials to state custody, accidental release by state officials, and subsequent apprehension.

First, a special agent for the government testified to Mr. Cherry's prior conviction and 275-month federal sentence. On cross-examination, the agent acknowledged that she was aware a notice of appeal had been filed on behalf of Mr. Cherry in those federal proceedings.

Second, Nathan Carter, an employee of FCI Williamsburg, testified that he processed Mr. Cherry's release to state custody. Mr. Carter testified that he confirmed with Mr. Cherry that "he still had a portion of his sentence to serve," and that Mr. Cherry signed an acknowledgment form, which stated (1) "I am . . . aware that the State officials should not release me into the community," and (2) "[i]f State officials release me . . . I agree to immediately call the following Bureau of Prisons officials at the designated federal institution in which I am personally incarcerated as indicated below." D.E. 58-3 at 2. The acknowledgement form listed Mr. Carter as the staff member to contact and included his phone number. *See id.* On cross-examination, Mr. Carter testified that when he presented the form to Mr. Cherry, he told him, "Make sure you come back because you're not finished with the feds yet." D.E. 80 at 44. Mr. Carter said that Mr. Cherry never contacted him and never retrieved his belongings from FCI Williamsburg. The federal officials only found out about the release when an individual at the Pinellas County Jail informed them of the error.

Third, Brandon Toles, a corporal in the Pinellas County Sheriff's Office, testified that on July 23, 2024, he was told that Mr. Cherry was to be released, that he verified the release, and that he

then prepared Mr. Cherry for release.  He stated that when he told Mr. Cherry that he was due to be released, Mr. Cherry seemed "surprised" and "asked [him] if [he] was sure," but never asked about his federal sentence.  *Id.* at 55–56.  After Officer Toles confirmed that Mr. Cherry was to be released, he had him prepared for release.  And he testified that "once [Mr. Cherry] got to the release area, they made an additional phone call and asked [to confirm that he was supposed to be released], and then another phone call was made by another staff member along the way."  *Id.* at 56–57.[1]

Fourth, Derrick Wilson, a deputy with the Sheriff's Office, then testified that he was on shift at the lobby through which inmates were released the night Mr. Cherry was released.  Deputy Wilson testified that Mr. Cherry "seemed . . . uneasy" when he came to the lobby and "asked [him] to confirm the status of his release."  *Id.* at 70.  Deputy Wilson confirmed the release; he also confirmed that Mr. Cherry did not ask about his federal sentence or returning to federal custody before he left.

Finally, Officer Brandi Bush of the Tampa Police Department and Deputy Matt Wiggins of the United States Marshals Service both testified about the apprehension of Mr. Cherry in an apartment building in Tampa, Florida, on September 7, 2024.

---

[1] Following Officer Toles' testimony, Officer John Fischer, a sergeant with the Pinellas County Sheriff's Office, testified that state officials conducted a Google search that night, discovered the extant federal sentence, and "realize[d] that the release should not have occurred."  *Id.* at 62–64.

At the close of evidence, Mr. Cherry moved for a judgment of acquittal under Rule 29. Mr. Cherry argued that the evidence was insufficient to establish that he knew of his lawful detention at the time the state officials released him in light of the fact that he knew he had taken an appeal in his federal case and the state officers told him he was to be released. The district court denied that motion.

After denying Mr. Cherry's motion, the district court asked counsel if the jury instructions filed by the government were acceptable, and Mr. Cherry's counsel indicated they were. The court therefore instructed the jury that the facts had to prove beyond a reasonable doubt that Mr. Cherry "knowingly escaped from custody," and defined escape as "fleeing or otherwise leaving another's custody or failing to return to custody while knowing that a detention is lawful." *Id.* at 110. Again, Mr. Cherry did not object to these instructions.

The jury ultimately returned a verdict of guilty, and the district court sentenced Mr. Cherry to serve a 24-month term of imprisonment. Mr. Cherry now appeals and contends that the court erred in denying his motion for a judgment of acquittal because the evidence was insufficient to prove that he knowingly or willfully escaped from custody.

## II

We review the sufficiency of the evidence to support the verdict *de novo*. *See United States v. McCrimmon*, 362 F.3d 725, 728 (11th Cir. 2004). In doing so, we "view[ ] the evidence in the light

6                     Opinion of the Court                    25-11533

most favorable to the government, making all reasonable infer-
ences and credibility choices in the government's favor to deter-
mine whether a rational jury could have found the defendant guilty
beyond a reasonable doubt." *Id.* (citing *United States v. Puche*, 350
F.3d 1137, 1142 (11th Cir. 2003)). "The verdict must stand . . . 'un-
less no trier of fact could have found guilt beyond a reasonable
doubt.'" *Id.* (quoting *United States v. Calderon*, 127 F.3d 1314, 1324
(11th Cir. 1997)). We review arguments raised for the first time on
appeal for plain error. *See United States v. Buchanan*, 146 F.4th 1342,
1353–54 (11th Cir. 2025).

### III

Mr. Cherry was convicted of escape under 18 U.S.C.
§ 751(a). That provision "doesn't expressly include a mens rea re-
quirement, but the Supreme Court in [*United States v.*] *Bailey*[, 444
U.S. 394 (1980),] construed § 751(a) to require proof that a defend-
ant 'knew his actions would result in his leaving physical confine-
ment without permission.'" *United States v. Bush*, 110 F.4th 1246,
1252 (11th Cir. 2024) (quoting *Bailey*, 444 U.S. at 408).

Mr. Cherry contends that the evidence presented at trial was
insufficient to establish that he knowingly or willfully committed
the offense of escape. That is so, he contends, because the evidence
demonstrated (1) that he was instructed by state officers that he
was to be released, that he sought assurances from them, and that
the officers reassured him that he was to be released; and (2) that
he had an appeal pending relating to the sentence on which he had

been held in federal custody.  He therefore asserts that he had reason to believe he was no longer subject to federal detention.  He contends that the government presented no evidence that he had any information suggesting he was released in error.

The government responds that Mr. Cherry raises his willfulness argument for the first time on appeal and that it did not need to prove willfulness.  It also maintains that the evidence at trial was sufficient to support the jury's verdict.

## A

First, the government contends that Mr. Cherry's argument that § 751(a) requires proof of willfulness is presented for the first time on appeal.  We agree.  Mr. Cherry's motion for judgment of acquittal was predicated on the assertion that the government failed to prove that he knew his federal detention was still in place at the time the state officials released him—in other words, he argued that the government failed to prove he knowingly left custody without permission.  At no point in the district court did Mr. Cherry contend that § 751(a) required proof of willfulness or that the government failed to present evidence of willfulness.  We therefore review this aspect of Mr. Cherry's appeal for plain error. *See Buchanan*, 146 F.4th at 1353 ("When a defendant raises specific challenges to the sufficiency of the evidence in the district court, but not the specific challenge he tries to raise on appeal, we review his argument for plain error.") (quoting *United States v. Baston*, 818 F.3d 651, 664 (11th Cir. 2016)).

To establish plain error, Mr. Cherry must show that there was error, the error was plain, and the error affected his substantial rights. *United States v. Edwards*, 142 F.4th 1270, 1276 (11th Cir. 2025) (citing *United States v. Monroe*, 353 F.3d 1346, 1349 (11th Cir. 2003)). If he does so, we have "discretion to recognize an unpreserved error but only if . . . the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quoting *United States v. Roosevelt Coats*, 8 F.4th 1228, 1235 (11th Cir. 2021)).

Mr. Cherry contends that the court erred in denying his motion for a judgment of acquittal because the government did not carry its burden of proving that his escape was willful. For the proposition that willfulness is an element of escape under § 751(a), Mr. Cherry refers us to *United States v. Bush*, 110 F.4th 1246, 1252 (11th Cir. 2024); *United States v. Brackett*, 582 F.2d 1027, 1028 (5th Cir. 1978) (per curiam), *cert. denied* 440 U.S. 921 (1979); *United States v. Bailey*, 444 U.S. 394, 413 (1980); *United States v. Joiner*, 496 F.2d 1314, 1315 (5th Cir. 1974), *cert. denied* 419 U.S. 1002 (1974); and *United States v. Locke*, 425 F.2d 313, 315 (5th Cir. 1970) (per curiam). None of these cases, however, hold that wilfulness is an element of § 751(a).

We start with *Bailey*, in which the Supreme Court addressed "the state of mind necessary for violation of § 751(a)." *Bailey*, 444 U.S. at 397. There, the district court had instructed the jury that, with respect to the escape statute, the government bore the burden of proving the defendant "knowingly committed an act which the law makes a crime"—thus, "[a]t a minimum, the juries had to find

that [the defendants] knew they were leaving the jail and that they knew they were doing so without authorization." *Id.* at 407–08. The Supreme Court approved of the instructions. *Id.* at 417 ("[T]he juries below were properly instructed on the *mens rea* required by § 751(a)."). And the Court "h[e]ld that the prosecution fulfills its burden under § 751(a) if it demonstrates that an escapee knew his actions would result in his leaving physical confinement without permission." *Id.* at 408.

In doing so, the Supreme Court reversed the D.C. Circuit's decision that "imposed the added burden on the prosecution to prove . . . 'an intent to avoid confinement.'" *Id.* at 408. The Court thus rejected the view that the government was required to prove the defendants "acted with the purpose—that is, the conscious objective—of leaving the jail without authorization." *Id.* Even if we narrowly construe *Bailey* only to reject the contention that the prosecution must prove that the defendant acted purposefully, *Bailey* did not hold, as Mr. Cherry suggests, that the government must prove that he acted willfully. Rather, *Bailey* held that the government need only prove that he "knew his actions would result in his leaving physical confinement without permission." *Id.* at 408.

The other decisions to which Mr. Cherry refers do not require proof of willfulness to support a conviction under § 751(a).

In *Bush* and *Brackett*, we reviewed convictions for escape in violation of § 751(a) *and* 18 U.S.C. § 4082(a). *See Bush*, 110 F.4th at 1248; *Brackett*, 582 F.2d at 1027. Under § 4082(a), "[t]he willful fail-

ure of a prisoner to remain within the extended limits of his confinement, or to return within the time prescribed to an institution or facility designated by the Attorney General, shall be deemed an escape . . . as provided in chapter 35 of this title." Thus, as we explained in *Bush*, § 4082(a) "is different" from § 751(a) in that "it explicitly requires proof that the defendant acted 'willful[ly].'" *Bush*, 110 F.4th at 1252. We therefore held in *Bush* that the district court erred in failing to instruct the jury that a conviction under § 4082(a) required the government to prove willfulness and that that error was plain. *See id.* at 1253. In doing so, we did not address—because we did not need to—whether the court's instructions, which lacked an instruction on willfulness, were correct under § 751(a) standing alone. *See Bush*, 110 F.4th at 1252 (declining to address whether § 751(a) required proof of willfulness, i.e., that the defendant knew "his actions were *unlawful*"). *Brackett*, which also involved review of a conviction under § 751(a) and § 4082(a), does not shed any more light on what is required under § 751(a).

Similarly, neither *Joiner* nor *Locke* establish that willfulness is the appropriate mens rea under § 751(a).

In *Locke*, the appellant challenged the admissibility of certain evidence introduced against him. *See Locke*, 425 F.2d at 314 ("Appellant's basic contentions in this Court are that the government exhibits were not certified and authenticated[.]"). *See also id.* at 315 ("Appellant claims that [a] statement [signed by him] was introduced as a 'confession' and, as such, prejudiced his Fifth Amendment right of due process."). Although we stated in *dicta* that "[t]he

government bore the burden of proving that appellant . . . acted 'knowingly,' 'willfully' and 'unlawfully,'" *id.*, our holding concerned the admissibility of the evidence introduced, not the elements of the offense of conviction.

And in *Joiner*, we assumed—there is no indication that the government argued otherwise—that willfulness was required and held that the evidence presented there was sufficient to show willfulness and therefore support the verdict. *See Joiner*, 496 F.2d at 1315 (concluding that "there was substantial evidence to support the verdict" over the appellant's contention that "the evidence was insufficient to show that his failure to return . . . was wilful"). That holding does not necessarily establish that proof of willfulness was required; only that, if required, the evidence sufficed to establish willfulness.

Nothing in the description of the government's burden under § 751(a), as articulated in *Bailey*, requires the prosecution to prove willfulness as we described it in *Bush*. In other words, nothing in *Bailey* indicates that the government must prove that the accused not only knows "that his actions would result in his leaving physical confinement without permission," *Bailey*, 444 U.S. at 408, but also knows that his conduct in leaving physical confinement without permission "was unlawful." *Bush*, 110 F.4th at 1253 (quoting *Bryan*, 524 U.S. at 193). Thus, our decision in *Bush*, read in tandem with the Supreme Court's decision in *Bailey*, indicates that the

district court did not err in denying Mr. Cherry's motion for a judgment of acquittal without considering whether the government proved that Mr. Cherry acted willfully.

Even if we were to assume there was error in the district court's failure to require proof of willfulness, that error would not be plain. Error is plain if controlling precedent demonstrates that an error has occurred. *See United States v. Ramirez-Flores*, 743 F.3d 816, 822 (11th Cir. 2014). *See also United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003) ("It is the law of this circuit that, at least where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it."). As explained above, none of the authorities on which Mr. Cherry relies establish that willfulness is an element of § 751(a), and the statute is itself silent with respect to the mens rea requirement. *See Bush*, 110 F.4th at 1252. Even assuming there were error, then, we cannot say that it was plain.

**B**

Next, Mr. Cherry contends that the evidence was insufficient to support the conviction because it failed to prove that he knew his detention remained lawful in light of the fact that he was aware he had a pending appeal with respect to his federal sentence and the fact that the state officers repeatedly told him he was to be released. As explained above, the Supreme Court has held that to establish the mens rea required for conviction under § 751(a), the government must "demonstrate[ ] that an escapee knew his actions

would result in his leaving physical confinement without permission." *Bailey*, 444 U.S. at 408.  For purposes of our review, we "view[ ] the evidence in the light most favorable to the government, making all reasonable inferences and credibility choices in the government's favor to determine whether a rational jury could have found the defendant guilty beyond a reasonable doubt." *McCrimmon*, 362 F.3d at 728 (citing *Puche*, 350 F.3d at 1142).

The government contends that the following evidence was sufficient to show Mr. Cherry's knowledge of his lawful federal detention at the time he left Pinellas County Jail: his signature on the acknowledgment form indicating his understanding that he was not to be released and that he would call an employee at the federal institution in the event he were released by state officials, Mr. Cherry's surprise at being told he was being released, his failure to ask about the federal sentence or contact Mr. Carter, and his decision not to retrieve his belongings at FCI Williamsburg.  Thus, although the state officials erroneously told him he was to be released, the government maintains that this evidence suffices to establish that Mr. Cherry knew that he was still subject to detention at FCI Williamsburg, that he knew he was to return there and contact the federal facility if state officials released him, and that he knew he had no authorization to leave federal custody.

Drawing, as we must, all inferences in favor of the government, this evidence is sufficient to uphold the verdict.  The jury could credit Mr. Carter's testimony that he told Mr. Cherry, "[m]ake sure you come back because you're not finished with the

feds yet," D.E. 80 at 44, and that he did so in the process of reviewing and having Mr. Cherry sign a form in which he acknowledged he was to return to FCI Williamsburg, was not to be released by state officials, and agreed "to immediately call" Mr. Carter if the state officials released him.  D.E. 58-3 at 2.  The jury could reasonably infer that Mr. Cherry knew he was not authorized to leave federal custody based on this evidence, particularly given that Mr. Cherry never asked about the status of his federal sentence.  The jury also could reasonably infer that Mr. Cherry's surprise at his release by the state officials demonstrated that he did not, as the defense argued at trial, believe at that point that the appeal in his federal case had been successful.

## IV

For the foregoing reasons, we hold that there was no plain error in the district court's failure to require the government to prove willfulness under § 751(a), and that the evidence was sufficient to support Mr. Cherry's conviction for escape.

**AFFIRMED.**